William B. SNEIRSON, Plaintiff,

v.

CHEMICAL BANK, Defendant.

Civ. Misc. No. 85–68 LON.

United States District Court, D. Delaware.

Nov. 12, 1985.

---

**1.** Plaintiff intends to amend its complaint to assert a direct claim against State Farm.

William B. Sneirson, pro se.

William F. Taylor of Young, Conaway, Stargatt & Taylor, Wilmington, Del.; John D. O'Dwyer of Budd Larner Kent Gross Picillo Rosenbaum Greenberg & Sade, Short Hills, N.J., of counsel, for defendant.

## OPINION

LONGOBARDI, District Judge.

■ Defendant Chemical Bank ("Chemical") moved this Court for an order compelling deposition testimony and production of documents by a nonparty, First National Bank of Wilmington ("First National"). Chemical also seeks sanctions against Pro Se Plaintiff William B. Sneirson[1] for his efforts to bar Chemical's discovery of First National.[2] This Court has jurisdiction over Chemical's application under Fed.R.Civ.P. 37(a)(1).[3]

## BACKGROUND

This discovery dispute emanates from an action filed by Sneirson against Chemical in the United States District Court for the District of New Jersey. Chemical allegedly misstated both the amount and nature of an outstanding MasterCard account to TRW Credit Data ("TRW"), a consumer reporting agency. As a result, Sneirson claims that TRW issued false credit reports which caused First National and other lenders to either refuse or restrict his credit requests. He charges that Chemical's conduct violates federal banking laws, as well as federal and state racketeering laws, and seeks compensatory and punitive damages, costs, attorney's fees and equitable relief.

Chemical's response to Sneirson's claim included service of a notice to take the deposition of Dennis Zuravic, Director of Investment Recovery, First National Bank of Wilmington. The subpoena duces tecum included a request for:

> Any and all files, correspondence, records, invoices or documentation of any kind concerning any and all bank accounts maintained by plaintiff, William B. Sneirson for the time period from June, 1979 to the present, including but not limited to all credit information and application for credit by William B. Sneirson.[4]

Plaintiff claimed that the request called for privileged information. First National then refused to release the records without a court order. Chemical's application to this Court for such an Order followed.

## I.

## A. RELEVANCE

■ The Federal Rules of Civil Procedure govern discovery in civil actions

---

1. Mr. Sneirson is a member of the bar of New York State.

2. Ordinarily, a party has no standing to object to discovery of a nonparty. However, an exception exists where a party claims "some personal right or privilege in respect to the subject matter of a subpoena duces tecum directed to a nonparty." *Dart Industries, Inc. v. Liquid Nitrogen Proc. Corp. of Cal.,* 50 F.R.D. 286, 291 (D.Del. 1970).

3. Fed.R.Civ.P. 37(a)(1) reads in part: "An application for an order to a deponent who is not a party shall be made to the court in the district where the deposition is being taken."

4. The subpoena also requests "[a]ny and all correspondence, documentation, writings, or correspondence [sic] between Chemical Bank and First National Bank of Wilmington concerning application for credit by the plaintiff, William B. Sneirson, for the time period from August, 1980 to the present." Plaintiff does not object to production of these documents.

brought in the federal district courts. *Memorial Hospital for McHenry County v. Shadur*, 664 F.2d 1058, 1061 (7th Cir.1981) (*per curiam*); Fed.R.Civ.P. 1. In general, the "[p]arties may obtain discovery regarding any matter, *not privileged*, which is *relevant* to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b)(1) (emphasis added). The party seeking discovery must therefore clear the "initial hurdle ... [of] demonstrat[ing] the relevance of the information sought to the issues involved in the case." *Pierson v. United States*, 428 F.Supp. 384, 390 (D.Del. 1977). But privileged information may be withheld "even if relevant to the lawsuit." *Baldrige v. Shapiro*, 455 U.S. 345, 360, 102 S.Ct. 1103, 1112, 71 L.Ed.2d 199 (1982).

Federal Rule of Evidence 501 "provides the framework for determining whether material sought in discovery is privileged." *Memorial Hospital for McHenry County v. Shadur*, 664 F.2d at 1061. Under this rule:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a ... person ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a ... person ... shall be determined in accordance with State law.

Fed.R.Evid. 501. Where, as here, "there are federal law claims in a case also presenting state law claims, the federal rule favoring admissibility, rather than any state law privilege, is the controlling rule." *Wm. T. Thompson Co. v. General Nutrition Corp.*, 671 F.2d 100, 104 (3d Cir.1982).

In the instant case, the requested information bears directly on the veracity of Plaintiff's pleadings. Each count of the complaint alleges that Chemical's conduct caused damage to the Plaintiff. Plaintiff's Complaint, Docket Item ("D.I.") 3, App. 1 at ¶¶ 18, 24, 31, 38, 44, 50. Plaintiff alleges that the denial of his credit application by First National was "a direct result of defendant's actions." Response to Defendant's Interrogatory 11, D.I. 3, App. 2. First National's reasons for the denial are therefore squarely in issue. Given the Federal Rules' policy of favoring broad disclosure during discovery, Plaintiff cannot seriously expect such charges as defamation, racketeering and noncompliance with the banking laws to go uncontested. He also cannot expect to conduct the litigation on ground rules that he selects. Chemical's request goes to the very heart of the subject matter at issue. The conclusion of relevance is, therefore, inescapable.

## B. PLAINTIFF'S CLAIM OF PRIVILEGE

■ Notwithstanding the relevancy of the subpoenaed documents, Plaintiff seeks to prevent their discovery by claiming a right to privacy in his financial records.[5] Plaintiff concedes that the federal constitution does not create such a privilege. Brief for Plaintiff, D.I. 5, p. 7; *United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976); *United States v. Ghidoni*, 732 F.2d 814, 817 (11th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 328, 83 L.Ed.2d 264 (1984). He argues instead that the privilege exists under federal public policy, the common law of New Jersey and the New Jersey State Constitution.

*United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, and the legislative response it engendered, disposes of Plaintiff's claim of privilege against disclosure on federal pub-

---

5. Plaintiff also argues that his wife's independent right to privacy in her financial records precludes Chemical's discovery of the Sneirsons' joint accounts. Plaintiff's zealous advocacy of his wife's separate legal status, Brief for Plaintiff, D.I. 5, pp. 23–25, contradicts the very result he seeks. Plaintiff has standing to challenge Chemical's discovery of First National only because *he* claims a privilege. See, *supra*, n. 5. He has no standing to assert the privilege of another nonparty.

lic policy grounds. *See, Clayton Brokerage Co., Inc., etc. v. Clement*, 87 F.R.D. 569, 571 (D.Md.1980). In *Miller*, a criminal defendant attempted to suppress bank records obtained by the government pursuant to "allegedly defective subpoenae duces tecum served upon two banks at which he had accounts." *Miller*, 425 U.S. at 436, 96 S.Ct. at 1621. The Court held that such records are the bank's business records, not the customer's private papers. *Id.* at 440, 96 S.Ct. at 1622. The Court "perceive[d] no legitimate 'expectation of privacy' in their contents" which might give rise to a protectable fourth amendment interest. *Id.* at 442, 96 S.Ct. at 1623. Standing alone, this holding clearly contradicts Plaintiff's claim of a federal public policy privilege against discovery of bank records.

Plaintiff challenges *Miller's* applicability by reference to the Right to Financial Privacy Act of 1978, 12 U.S.C. §§ 3401, *et seq.*, ("Financial Privacy Act"), which sought to correct perceived inadequacies in *Miller* by limiting *government* access to individual financial records. Congress enacted the Financial Privacy Act "to strike a balance between [bank] customers' right of privacy and the need of law enforcement agencies to obtain financial records pursuant to legitimate investigations." 1978 U.S.Code Cong. & Ad.News 9273, 9305. Congress protected the "sensitive nature" of financial records which it felt *Miller* had ignored, *id.* at 9306, by giving customers standing to challenge *government* requests for bank records. 12 U.S.C. § 3410. "Nothing in the Act ... shields the records of a bank customer's transactions from discovery in a civil suit." *Clayton Brokerage Co., Inc., etc. v. Clement*, 87 F.R.D. at 571. In fact, the act specifically exempts from the protection the documents requested "by a Government authority under the Federal Rules of Civil ... Procedure ... in connection with litigation to which the Government authority and the customer are parties." 12 U.S.C. § 3413(e). No dif-

ferent result is indicated for litigation between two private parties, particularly where the party resisting discovery has instituted the suit. Plaintiff's claim of privilege pursuant to federal public policy is therefore without merit.

■ Assuming *arguendo* that both the state constitution and the common law of New Jersey create a right to privacy in financial records, such state privileges do not preclude discovery of relevant information in a federal court suit. *Wm. T. Thompson Co. v. General Nutrition Corp.*, 671 F.2d at 103–04. This case involves both federal and state law claims. The settled [6] federal rule clearly favors discovery of the relevant bank records while the assumed state privilege law precludes access. Under the authority of *Wm. T. Thompson*, the settled federal rule controls. *Id.* at 104. Plaintiff's alleged state privileges are therefore unavailing.

## II.

### CHEMICAL'S MOTION FOR SANCTIONS

■ Chemical seeks sanctions against Plaintiff Sneirson pursuant to Fed.R.Civ.P. 37(a)(4). Under Rule 37(a)(4), a party which unsuccessfully resists a motion to compel discovery must "pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust." Fed.R.Civ.P. 37(a)(4).

Plaintiff Sneirson premised his objections to Chemical's subpoena on his purported federal right to the privacy of his financial records. The Court's adverse ruling on this issue, however, does not necessarily resolve the question of substantial justifi-

---

**6.** The *Wm. T. Thompson* court noted that its holding "does not ... preclude resort to state law analogies for the development of a federal common law of privileges in instances where the federal rule is *unsettled.*" 671 F.2d at 104. (Emphasis added.) As in *Wm. T. Thompson* itself, the federal rule on the privilege in question here has been settled.

cation for Plaintiff's position. The right to privacy has been recognized by the Supreme Court in a variety of circumstances. *See, e.g., Baldridge v. Shapiro*, 455 U.S. at 361, 102 S.Ct. at 1113 (1982) (finding census information to be privileged); *Roe v. Wade*, 410 U.S. 113, 153, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973) (finding that the right to privacy "encompass[es] a woman's decision whether or not to terminate her pregnancy"); *Griswold v. Connecticut*, 381 U.S. 479, 485–86, 85 S.Ct. 1678, 1682, 14 L.Ed.2d 510 (1965) (holding that the right to marital privacy bars a state statute prohibiting the use of contraceptives by married couples). Congress has protected this right further with such statutes as the Privacy Act of 1974, 5 U.S.C. § 552a (1977) (limiting access to agency records on individuals and providing notice to individuals when their records are sought), the Right to Financial Privacy Act of 1978, 12 U.S.C. § 3401, *et seq.* (1980) (limiting the *government's* access to financial records), the Family Educational Rights and Privacy Act of 1974, 20 U.S.C. § 1232g (1978) (restricting disclosure of personal and educational information held by an educational institution) and the Privacy Protection Act of 1980, 42 U.S.C. § 2000aa (1981) (limiting the search and seizure of journalists' work product materials in furtherance of a criminal investigation). The states have also enacted statutes and constitutional amendments that protect privacy interests. R. Peck, *Extending the Constitutional Right to Privacy in the New Technological Age*, 12 Hofstra L.Rev. 893, 897 (1984). With this expansive view of privacy in mind, one commentator has even suggested that the law of protectable privacy interests should recognize the confidentiality of the bank records deemed unprivileged in *Miller*.[7] *Id.* at 907. The Court finds, therefore, that Plaintiff's position had the substantial justification necessary to avert the imposition of sanctions under Rule 37(a)(4).

---

7. Had the Court recognized this interest here, we would have felt compelled to address Chemical's argument that Plaintiff's initiation of this suit placed his financial standing in issue, thereby constituting a waiver of the privilege.