**James E. O'NEIL, Attorney General, R.I. as he functions under the Rhode Island Environmental Advocacy Statute, and Robert L. Bendick, Jr., in his capacity as Director of the Rhode Island Department of Environmental Management, Plaintiffs,**

v.

**Q.L.C.R.I., INC., Bernard R. Dutra, David F. LaRoche, The LaRoche Grantor Income Trust, David L. Brodsky, P. Alan Ryan, Carolyn Rose, a/k/a Carolyn McElroy, Paul Buff, Davisville Credit Union and Suffolk Bank, Defendants.**

Civ. A. Nos. 88–0704, 88–0705 P.

United States District Court,
D. Rhode Island.

Oct. 29, 1990.

See also 749 F.Supp. 381.

Betsy Grossman de Leiris, Newport, R.I., Timothy M. Boudewyns, Portsmouth, R.I., for plaintiff.

S. Paul Ryan, East Providence, R.I., for Save the Bay, Inc.

Michael Rubin, Sr. Asst. Atty. Gen., Charles P. Messina, Kendra Beaver, Dept. of Env. Mngt., Providence, R.I., for Robert Bendick—plaintiff in 88–0705.

Barry Kusinitz, Martin Aisenberg, Temkin & Miller, Providence, R.I., for LaRoche & Q.L.C.R.I., and LaRoche Grantor Income Trust.

Thomas H. Quinn, Jr., Providence, R.I., for Dutra and Alofson.

Matthew F. Medeiros, Jeffrey C. Schreck, Flanders & Medeiros, Providence, R.I., for 3rd party defendants.

James L. Paradise, Middletown, R.I., pro se.

Kenneth R. Tremblay, Tremblay & Gorton, Portsmouth, R.I., for Edward and Norma DeArruda.

Matthew Medeiros, Flanders & Medeiros, Providence, R.I., for Suburban Land Co.

John Voorhees, Tillinghast, Collins & Graham, Providence, R.I., for Davisville Credit Union.

William Y. Chaika, Chaika & Chaika, Cranston, R.I., for Carolyn Rose and Paul Buff.

Stephen B. Lang, Providence, R.I., for P. Alan Ryan.

Gerald J. Petros, Hinckley, Allen Snyder & Comen, Providence, R.I., for Suffield Bank.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

The background of this case is set out in this Court's opinion and order of May 18, 1990, *Friends of Sakonnet v. Dutra*, 738 F.Supp. 623 (D.R.I.1990), and need not be repeated here. Currently before the Court are three motions involving defendant Davisville Credit Union (Davisville): 1) defendant's motion to dismiss; 2) plaintiff's motion to amend the complaint; and 3) plaintiff's motion to compel discovery.

### I. *Motions to Dismiss and Amend*

Davisville is involved in this case because it granted two mortgages on the land that is the subject of this case and because it currently holds a mortgage on the land. Plaintiff, the Attorney General, alleges three types of claims against Davisville. In the original complaint, plaintiff alleges that "[i]f the Davisville Credit Union forecloses upon the land under the Ryan mortgage and fails to halt the discharge, Davisville Credit Union, or its successors, will violate" federal and state statutory and common law and that Davisville's present mortgage interest is subject to a 1979 Department of Environmental (DEM) Management order. In its amended complaint, plaintiff alleges that Davisville aided and abetted violations of federal and state statutory and common law.

■ A complaint should not be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The issue must be resolved in the light most favorable to the plaintiff with any doubt resolved in his behalf. *Jenkins v. McKeithen*, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). Therefore, the Court must deny a motion to dismiss if the allegations of the complaint permit relief to be granted on any theory, even one not expressly stated therein. *Adams v. Bell*, 711 F.2d 161, 187 (D.C.Cir.1983), *cert. denied*, 465 U.S. 1021, 104 S.Ct. 1272, 79 L.Ed.2d 678 (1984).

■ Fed.R.Civ.P. 15(a) encourages a lenient approach to motions to amend: "leave shall be freely given when justice requires." It is within a court's discretion to grant or deny a motion to amend, *Johnston v. Holiday Inns, Inc.*, 595 F.2d 890, 896 (1st Cir.1979), based on the balancing of several factors, including futility, delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previously allowed amendments, and most importantly, prejudice to the opposing party. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). If there is no prejudice, leave to amend in most cases should be granted. *See e.g., Corey v. Look*, 641 F.2d 32, 38 (1st Cir.1981).

### A. Claims relating to Davisville's possible foreclosure

■ Davisville argues that the claims relating to actions Davisville might take in the future to foreclose on the mortgage do not present a case or controversy. For a federal court to assume jurisdiction of a case, Article III of the Constitution requires an actual case or controversy. *See United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 395–96, 100 S.Ct. 1202, 1208–09, 63 L.Ed.2d 479 (1980); *Flast v. Cohen*, 392 U.S. 83, 94–95, 88 S.Ct. 1942, 1949–50, 20 L.Ed.2d 947 (1968). In addition, a federal court cannot grant relief under the Declaratory Judgment Act without an "actual controversy." 28 U.S.C.

§ 2201; *Steffel v. Thompson*, 415 U.S. 452, 458–59, 94 S.Ct. 1209, 1215–16, 39 L.Ed.2d 505 (1974). "The difference between an abstract question and a 'controversy' ... is one of degree" and the issue is whether the controversy is "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).

Plaintiff's claims are based upon Davisville foreclosing on the mortgage in the future. Because the mortgage is in arrears, this is a distinct possibility. However, under Rhode Island law, a mortgagee who forecloses is only authorized to sell the land at public auction, R.I.G.L. § 34–11–22, although the mortgagee is permitted to then buy the land at the public auction. R.I.G.L. § 34–27–2. Therefore, plaintiffs claims are that *if* Davisville forecloses and *if* Davisville buys the property at public auction and *if* Davisville then does nothing to remedy the sewage problem, then Davisville will be in violation of federal and state statutory and common law. Because these claims depend on a series of contingencies, they lack the necessary "immediacy and reality" for this Court to assume jurisdiction.

These claims do not present a justiciable case or controversy; therefore, Count I, ¶ 106; Count II, ¶ 110; Count III, ¶ 114; and Count IV, ¶ 119 are dismissed.

### B. Aiding and Abetting Claims

■ The futility of an amended claim is a proper basis for its denial. *Foman v. Davis*, 371 U.S. at 182, 83 S.Ct. at 230; *Vargas v. McNamara*, 608 F.2d 15, 18 (1st Cir.1979). This Court will begin, therefore, by analyzing the aiding and abetting claims under the same standards used in a motion to dismiss.

Plaintiff seeks to use the common law concept of aiding and abetting to find Davisville in violation of federal and state statutory and common law. The Restatement (Second) of Torts § 876 sets out the standard for aiding and abetting liability: "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he ... (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself...." Plaintiff alleges that Davisville's close relationship with the principals is shown by the two "straw conveyances," namely the Davisville mortgages. They allege that Davisville "collaborated in a scheme to lend money to a borrower in the name of another." Most importantly, plaintiff alleges that Davisville had "influence and control" over the principal polluters because Davisville knew of the sewage problem and could have conditioned the loans on the fixing of the sewage problem.

Davisville argues that there is no aiding and abetting liability under the "citizen suit" provision of the Federal Water Pollution Control Act (FWPCA), 33 U.S.C. § 1365. Section 1365(a) allows for suit:

(1) against any person ... who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or

(2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

Davisville relies on a series of cases, primarily *Ringbolt Farms Homeowners Ass'n v. Town of Hull*, 714 F.Supp. 1246 (D.Mass.1989) and *Love v. New York State Dep't of Environmental Conservation*, 529 F.Supp. 832 (S.D.N.Y.1981), in support of its argument that § 1365 allows suit against only the principal polluter.

Plaintiff, in his reply brief, persuasively argues that Davisville's cases are not controlling. The cases cited by Davisville are suits against state regulators. The states have a special role under the FWPCA through the National Pollutant Discharge Elimination System (NPDES) program, see 33 U.S.C. § 1342(b). A number of cases have held that states' decisions regarding permits under NPDES are not reviewable in federal court. *See American Paper Institute, Inc. v. EPA*, 890 F.2d 869 (7th

Cir.1989); *District of Columbia v. Schramm*, 631 F.2d 854 (D.C.Cir.1980); *Mianus River Preservation Comm. v. Administrator, EPA*, 541 F.2d 899 (2d Cir. 1976). *Love* and *Ringbolt Farms* were attempts to circumvent this series of cases and to find state agencies indirectly liable for being "in violation" under § 1365. As plaintiff's reply brief explains in great detail, the courts distinguished *state* agencies from direct polluters and held that plaintiffs could not reach state regulators in this fashion. *See Ringbolt Farms*, 714 F.Supp. at 1253; *Love*, 529 F.Supp. at 839. Because so much of the reasoning involved in these cases deals with the special role of the states, their holdings do not control a suit against a private party.

In the absence of controlling cases, this Court must determine whether the common law concept of aiding and abetting can be used to determine liability under the FWPCA. "[T]he applicability of common law doctrines in litigation under federal statutes depends on whether these principles advance the goals of the particular federal statute which plaintiffs allege has been violated." *Petro–Tech, Inc. v. Western Co. of North America*, 824 F.2d 1349 (3d Cir.1987) (citations omitted). The doctrine of aiding and abetting has been found to further the goals of other federal statutes. *See, e.g., FDIC v. First Interstate Bank of Des Moines*, 885 F.2d 423 (8th Cir.1989) (banking laws); *Petro–Tech*, 824 F.2d 1349 (RICO); *Metge v. Baehler*, 762 F.2d 621 (8th Cir.1985), *cert. denied*, 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986) (Securities Act of 1934).

The Supreme Court has ruled that the FWPCA pre-empts the federal common law of public nuisance. *Milwaukee v. Illinois and Michigan*, 451 U.S. 304, 319, 101 S.Ct. 1784, 1793, 68 L.Ed.2d 114 (1981). This does not mean that the FWPCA pre-empts consideration of an aiding and abetting theory. *Milwaukee* dealt with a separate cause of action, whereas aiding and abetting is a concept that can be used to interpret "in violation" under § 1365. *See Petro–Tech*, 824 F.2d at 1357 ("The doctrine of aiding and abetting is simply one way that an individual can violate the substan-

tive ... law."). In *Milwaukee*, the Supreme Court reached its decision by noting that the vague federal common law nuisance standards had been replaced when Congress thoroughly addressed the issue of effluent standards in the FWPCA. *Milwaukee*, 451 U.S. at 320, 101 S.Ct. at 1794. As the Court stated, the "question was whether the legislative scheme 'spoke directly to a question.'" *Id.* at 315, 101 S.Ct. at 1791 (citations omitted). Nothing in the FWPCA rules out the use of the aiding and abetting doctrine. Because the concept could be useful in interpreting who is "in violation," claims based on aiding and abetting a violation of the FWPCA will not be ruled out.

Plaintiff has alleged sufficient involvement and possible control on the part of Davisville to present a viable claim of aiding and abetting. This Court, therefore, rejects Davisville's arguments that the FWPCA bars aiding and abetting claims. Davisville has presented no arguments for disallowing aiding and abetting claims in relation to the state statutory and common law claims. Thus, all the aiding and abetting claims can withstand a motion to dismiss and are not futile.

This Court further holds that it would not prejudice Davisville to allow plaintiff to amend the complaint to add the aiding and abetting claims because they are based on the same factual allegations as those in the original claims against Davisville. The motion to amend Counts I, II, III, and IV to add aiding and abetting claims is therefore granted.

**C. Claim relating to 1979 DEM order**

█ Plaintiff seeks to have this Court find that Davisville's present mortgage is subject to the 1979 order of the DEM. Defendant argues that there is no basis for equitable subordination in this case and that the claim should be dismissed. This Court has already allowed the plaintiff to add a claim of aiding and abetting a violation of the DEM order. If plaintiff prevails on this claim, this Court may reach Davisville's security interest in fashioning relief. Plaintiff has thus alleged a basis for the

requested relief to be granted. The motion to dismiss Count III, ¶ 115 is denied.

## II. *Motion to Compel Discovery*

Plaintiff requests that this Court compel Davisville to respond fully to two sets of interrogatories and a request to produce documents. Davisville objected to some interrogatories and requests for documents and answered other interrogatories in a manner that plaintiff believes is incomplete. In addition to assertions that the requested information is irrelevant,[1] Davisville argues that certain information is privileged as confidential banking records or privileged under state statute and that its other answers are complete.

### A. Banker-customer privilege

■ Davisville objected to certain interrogatories on the grounds that "disclosure of this information would violate the financial privacy of the account holder." In its brief, Davisville cites a string of cases which state that a financial institution has an implied contract to keep financial information relating to its depositors confidential. Davisville's use of these authorities is disingenuous, at best.[2] The very authorities cited by Davisville also state that there is an exception to the duty of confidentiality when the institution is compelled by legal process. *See, e.g., Indiana Nat'l Bank v. Chapman*, 482 N.E.2d 474, 482 (Ind.App.1985); *Suburban Trust Co. v. Waller*, 44 Md.App. 335, 408 A.2d 758, 764 (1979); 10 Am.Jur.2d Banks § 332 (1963).

"[T]he mere fact that a communication was made in express confidence, or in the implied confidence of a confidential relationship, does not create a privilege." 8 Wigmore *Evidence* § 2286 (1961). At common law, there is no privilege for communication with a bank. *Id.* Federal courts have refused to recognize any banker-customer privilege. *See e.g., United States v.*

*Prevatt*, 526 F.2d 400, 402 (5th Cir.1976); *Sneirson v. Chemical Bank*, 108 F.R.D. 159, 162 (D.Del.1985); *Rosenblatt v. Northwest Airlines, Inc.*, 54 F.R.D. 21, 23 (S.D.N.Y.1971). Even after passage of the Right to Financial Privacy Act of 1978, 12 U.S.C. §§ 3401 *et seq.*, bank records are not shielded in a civil suit. *See Sneirson*, 108 F.R.D. at 162; *Clayton Brokerage Co. v. Clement*, 87 F.R.D. 569, 570–71 (D.Md. 1980).

■ Davisville's reliance on a duty to keep information confidential is not supportable. All records and information relating to David LaRoche, Q.L.C.R.I. or any other party to this case must be supplied to plaintiff. Plaintiff also, however, seeks information regarding loans made to non-parties in order to determine if the Davisville mortgages involved in this case departed from standard practice. Davisville raises legitimate concerns about disclosing information relating to non-parties. The court in *Rosenblatt* noted that financial information is sensitive and "must not be trafficked in with indifference or needlessly invaded." *Rosenblatt*, 54 F.R.D. at 23. The cases cited above which find no banker-customer privilege all dealt with financial information of a party. In the absence of explicit guidance, this Court has tried to balance Fed.R.Civ.Pro. 26(b)(1), which allows discovery relating to any relevant, non-privileged information, and this Court's concerns for the privacy of non-parties. The information sought could be relevant in establishing irregularities in Davisville's procedures when it granted the mortgages at issue. This Court will order the disclosure of the requested information, but, in order to safeguard the privacy of third parties, allow Davisville to delete the names of the non-party borrowers and any other identifying information.

---

**1.** All the information requested relates to the potential impropriety of Davisville's financial transactions with some of the other defendants in this case. Because this has bearing on the aiding and abetting claims which this Court is allowing plaintiff to add, none of the requested information is irrelevant.

**2.** The fact that Davisville also chided the plaintiff for not citing these inapposite cases further strained this Court's patience.

**B. Privilege under state statute**

■ Davisville asserts that it is unable to disclose certain information and documents because of R.I.G.L. § 19–21–38.3. On its face, this law merely prevents voluntary disclosure of credit union examinations and reports by the State Director of Business Regulation. This Court could not find any case law interpreting the statute, but plaintiff supplied cases from other jurisdiction which interpreted similar statutes as mandating confidentiality but not creating any privilege. *See Steven Operating Inc. v. Home State Savings*, 105 F.R.D. 7 (S.D.Ohio 1984); *Maine Sugar Industries, Inc. v. Maine Industrial Building Authority*, 264 A.2d 1 (Me.1970); *Lakewood Trust Co. v. Fidelity and Deposit Co. of Md.*, 81 N.J.Super. 329, 195 A.2d 503 (1963). The Rhode Island statute is consistent with these other laws which create no privilege.

■ Even if this Court were to find a state privilege, it would not govern this case. This case involves both federal and state claims. In such a case, "the federal rule favoring admissability, rather than any state law privilege, is the controlling rule." *Wm. T. Thompson Co. v. General Nutrition Corp.*, 671 F.2d 100, 104 (3d Cir.1982) (refusing to follow explicit state statutory privilege in case with federal and state claims). This rule is consistent with the legislative history of Fed.R.Evid. 501 and the federal trend of disfavoring privileges which are not constitutionally based. *Id.*

Davisville thus cannot assert any privilege and must comply with plaintiff's discovery requests.

**C. Allegedly incomplete answers**

Fed.R.Civ.Pro. 37(a)(3) provides that an evasive or incomplete answer is to be considered a failure to answer, allowing a court to grant a motion to compel an answer under Fed.R.Civ.Pro. 37(a)(2). This Court must evaluate Davisville's responses to determine whether they are complete.

Davisville's answers to Interrogatories 20(i) and 35(i) are not as specific a response as was requested and may be evasive.

This Court orders Davisville to supply a more detailed answer.

The dispute as to Interrogatories 54 and 55 centers on whether Davisville knew on July 17, 1990, the date of its answer, the result of the examinations referred to in its responses. Rather than trying to determine when Davisville knew what, this Court will invoke its power under Fed.R. Civ.Pro. 26(e)(3) and order Davisville to supplement its original answer to supply whatever information it has regarding the examinations at the present time.

**CONCLUSION**

Davisville has demonstrated that the claims relating to the possibility it will foreclose in the future do not present a case or controversy and must be dismissed. The aiding and abetting claims are viable, however, and because adding them will not prejudice Davisville, plaintiff is given leave to amend the complaint. Plaintiff has also alleged facts sufficient to support the claim under the 1979 DEM order.

Plaintiff has substantially prevailed on its motion to compel discovery. Davisville cannot claim a banker-customer privilege and must disclose the requested information and documents, but may shield the identity of non-party customers. Davisville must also disclose the state reports because there is no state statutory privilege and, even if one could be found, federal practice trumps the state law. Finally, Davisville must give more complete answers to the four interrogatories which plaintiff identifies as incomplete.

**ORDER**

It is hereby ORDERED that defendant's motion to dismiss is GRANTED as to Count I, ¶ 106; Count II, ¶ 110; Count III, ¶ 114; and Count IV, ¶ 119; and DENIED as to Count III, ¶ 115; that plaintiff's motion to amend is GRANTED; and that plaintiff's motion to compel discovery is GRANTED, but with the limitations set out above.