William SOCHA

v.

NATIONAL ASSOCIATION OF LETTER CARRIERS, BRANCH NO. 57 (MERGED), John J. Pimentel, Jr., Individually and in his Official Capacity as President of Branch No. 57 (Merged) of the National Association of Letter Carriers, Raymond Sartini, Michael Szeliga, Robert Haupt, in their Capacities as Officers of the National Association of Letter Carriers, Branch No. 57 (Merged), National Association of Letter Carriers of the United States of America, Vincent R. Sombrotto, in his Official Capacity as President of National Association of Letter Carriers of the United States of America, Eric Lawson, in his Capacity as Postmaster, Town of Warren, Rhode Island, United States Postal Service and the United States Postal Service.

Civ. A. No. 94–0043–T.

United States District Court,
D. Rhode Island.

March 25, 1995.

Joel D. Landry, Landry & Connors Law Associates, Providence, RI, for plaintiff.

Robert E. Savage, Warwick, RI, for Nat. Ass'n of Letter Carriers, Branch No. 57.

Anthony C. DiGioia, Asst. U.S. Atty., Providence, RI, for Eric Lawson, in his capacity as Postmaster, Town of Warren, RI, and U.S. Postal Service.

## ORDER

TORRES, District Judge.

The Report and Recommendation of Magistrate Judge Robert W. Lovegreen dated December 28, 1994, is hereby ACCEPTED for the reasons set forth in the Report and for the further reason that, despite having had ample opportunity to do so, the plaintiff has failed to comply with a prior order of this Court requiring him to set forth the specific facts on which his claims are based, the law or legal theory on which each claim is based and the specific damages or relief sought.

Accordingly, it is hereby ORDERED as follows:

1. All claims against National Association of Letter Carriers, Branch No. 57, John J. Pimentel, Raymond Sartini, Michael Szeliga, Robert Haupt and Vincent R. Sombrotto (i.e., the union defendants) are dismissed.

2. Plaintiff is directed to appear at 10:00 a.m. on May 12, 1995, and show cause why his claims against the remaining defendants (i.e., the government defendants) as set forth in Counts 4, 6 and 7 should not be dismissed for reasons set forth in the Magistrate Judge's Report and Recommendation.

3. Any claims for which sufficient cause is shown and the claims against the government defendants set forth in Count 3 are hereby assigned to the May trial calendar.

## REPORT AND RECOMMENDATION

LOVEGREEN, United States Magistrate Judge.

Presently before the court is the motion of defendants, National Association of Letter Carriers, AFL–CIO ("NALC"), Branch 57 of the National Association of Letter Carriers, AFL–CIO ("Branch 57"), Vincent R. Sombrotto ("Sombrotto"), John J. Pimentel, Jr. ("Pimentel"), Raymond Sartini ("Sartini"), Michael Szeliga ("Szeliga") and Robert Haupt ("Haupt") (hereinafter, collectively, the "Union Defendants") to dismiss the plaintiff's, William Socha's, amended complaint pursuant to Fed.R.Civ.P. 12(b)(6), failure to state a claim upon which relief can be granted. The plaintiff's complaint alleges that the Union Defendants breached the NALC constitution, breached their duty to represent plaintiff fairly, violated his rights to freedom of speech and assembly protected by the First Amendment to the United States Constitution, intentionally inflicted emotional distress upon the plaintiff and libelled and slandered the plaintiff's reputation.

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); D.R.I. Local Rule 32(c)(2). For the following reasons, I recommend that the Union Defendants' Motion to Dismiss the Amended Complaint be granted.

### Background

#### I. Procedural History

At the outset, an outline of the procedural history of this case will help to illustrate the context of this motion. On January 12, 1994, plaintiff filed a complaint in the Superior Court of the State of Rhode Island in and for the County of Providence against Branch 57,

Pimentel, individually and in his capacity as President of Branch 57, Eric Lawson ("Lawson"), in his capacity as Postmaster for the Town of Warren, Rhode Island and the United States Postal Service. That original complaint asserted claims of employment discrimination, breach of duty of fair representation, libel and slander. Lawson and the Postal Service removed the action to this Court on February 10, 1994. Thereafter, Branch 57 and Pimentel moved for an order directing plaintiff to file a more definite statement of his complaint. That motion was granted on February 24, 1994 pursuant to D.R.I. Local Rule 12(a)(2), because no objection had been timely filed, and plaintiff had ten days thereafter in which to file a more definite statement of his complaint pursuant to Fed.R.Civ.P. 12(e). By March 29, 1994, plaintiff had failed to file a more definite statement as ordered, and Branch 57 and Pimentel correspondingly moved for an order striking the claims against them. That motion was referred to me, and at a hearing on May 23, 1994, I denied the motion to strike at that time, allowing plaintiff until June 6, 1994 to file a more definite statement. Otherwise, the motion to strike was to be granted.

At a pretrial conference, District Judge Ernest Torres ordered the plaintiff to file an amended complaint by June 6, 1994, requiring it to "set forth the specific particulars as to the facts on which the claims are based [and] ... in separate counts the precise nature of each claim and the basis for the claim. If it's based on State Law, Federal Law, common law and if so, what the theory is behind each of the claims. It shall set forth, specifically, the damages alleged and the relief being sought." (Transcript of 5/31/94 conference, Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem."), Ex. A.) The plaintiff filed an Amended Complaint on June 6, 1994 which added as parties the NALC, Sombrotto, in his official capacity as President of the NALC and Sartini, Szeliga and Haupt, in their capacities as Officers of Branch 57 and asserted a number of claims more fully addressed subsequently herein.

Worth noting also, is that the plaintiff apparently filed a Statement of Elements in an attempt to explain his claims in the Amended Complaint. The Union Defendants assert that plaintiff was ordered by the Court to provide such a statement with accompanying citations to legal authorities. No such order is evident from the Court's docket. Nevertheless, the plaintiff's Statement of Elements is little more than a regurgitation of his claims in the Amended Complaint.

## II. The Amended Complaint

In the General Allegations section of the Amended Complaint the plaintiff alleges that he has been employed by the U.S. Postal Service at the Warren, Rhode Island Post Office since May 31, 1980, has been a member in good standing of Branch 57 at all times material to the Amended Complaint and has a diagnosed history of "major depression related to job stress." (Complaint ¶¶ 9–11.) In that section, plaintiff sets forth a series of alleged disciplinary actions taken against him by Lawson and the Postal Service. Some of these disciplinary actions are alleged to have been taken at the behest of Pimentel. Id. ¶¶ 26 and 32. Plaintiff also alleges that on a number of occasions NALC, Branch 57 or Pimentel refused to or failed properly to represent him in regard to these disciplinary actions. Id. ¶¶ 28, 31, 35 and 39. In addition, plaintiff alleges that Pimentel harassed plaintiff in a manner that was outside the scope of Pimentel's employment by the U.S. Postal Service and his duties as President of Branch 57. Id. ¶ 37. Pimentel is also alleged to have interfered with the plaintiff's mail prior to its delivery to plaintiff's residence. Id. ¶ 36.

The Amended Complaint contains seven counts which are recurrently imprecise and unorthodox. Count One, entitled Breach of NALC Constitution, alleges that Pimentel and the NALC breached a duty to uphold and perform the agreements set forth in the NALC constitution. Id. ¶¶ 41 and 42. Count Two, entitled Breach of Duty of Fair Representation, states that Pimentel and the NALC breached a duty to represent plaintiff fairly "in any and all action arising under the NALC constitution." Id. 45 and 46. Counts Three and Five, entitled Violation of Freedom of Speech and Freedom of Assembly,

respectively, allege that the NALC, Branch 57, Pimentel, Lawson and the Postal Service violated plaintiff's right to freedom of speech and the NALC, Branch 57, and Pimentel violated plaintiff's right to freedom of assembly, both guaranteed by the First Amendment to the United States Constitution. *Id.* ¶¶ 49, 50, 58 and 59. Further, plaintiff alleges in Count Five that "[t]he actions of Branch No. 57, Pimentel and NALC constitute a violation of Title IV of the Labor–Management Reporting and Disclosure Act of 1959 ("LMRDA"), ... 29 U.S.C. § 401 et seq. ...." *Id.* ¶ 60.

Count Four, alleges that the NALC, Branch 57, Pimentel, Lawson and the Postal Service intentionally inflicted emotional distress upon the plaintiff. Count Six, entitled Libel and Slander, avows that Pimentel, Lawson and other member of NALC and employees of the Postal Service have libelled and slandered plaintiff. *Id.* ¶ 63, 66 and 68. Lastly, Count Seven alleges that the Defendants violated R.I.Gen.Laws § 42–112–1 and Article 1 Section 2 of the Constitution of the United States. *Id.* ¶ 74.

## *Discussion*

### I. *Fed.R.Civ.P. 12(b)(6) Standard.*

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of an action if that action fails to state a claim upon which relief can be granted. The First Circuit Court of Appeals has recognized a tension among precedents regarding the particularity of pleading required to overcome a Rule 12(b)(6) motion and has noted that "the degree of specificity with which the operative facts must be stated in the pleadings varies depending on the case's context." *Boston & Maine Corp. v. Town of Hampton,* 987 F.2d 855, 863 (1st Cir.1993) (quoting *U.S. v. AVX Corp.,* 962 F.2d 108, 115 (1st Cir.1992)).

In deciding a Rule 12(b)(6) motion, "the court must accept the well-pleaded factual averments of the ... complaint as true, and construe these facts in the light most flattering to the [plaintiff's] cause...." *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir.1988) (quoting *Chongris v. Board of Appeals,* 811 F.2d 36, 37 (1st Cir.), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 765

(1987)). Further, "the Court must deny a motion to dismiss if the allegations of the complaint permit relief to be granted on any theory, even one not expressly stated therein." *O'Neil v. O.L.C.R.I.,* 750 F.Supp. 551, 553 (D.R.I.1990). "Nevertheless, minimal requirements are not tantamount to nonexistent requirements." *Gooley v. Mobil Oil Corp.,* 851 F.2d at 514. "[A] plaintiff ... is ... required to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Id.* at 515.

> In connection with run-of-the-mine motions brought under Rule 12(b)(6), a reviewing court is obliged neither to "credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions or outright vituperation," nor to honor subjective characterizations, optimistic predictions or problematic suppositions. "[E]mpirically unverifiable" conclusions, not "logically compelled, or at least supported by the stated facts," deserve no deference.

*U.S. v. AVX Corp.,* 962 F.2d at 115 (citations omitted). "It is only when such conclusion are logically compelled, or at least supported, by the stated facts, that is, when the suggested inference rises to what experience indicates is an acceptable level of probability, that 'conclusions' become 'facts' for pleading purposes." *The Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir.1989).

The Court has the discretion to impose heightened specificity requirements when it is concerned about the plaintiff's ability to make out a cause of action based on the events as narrated in the complaint. *See Boston & Maine Corp. v. Town of Hampton,* 987 F.2d at 867. This occurred here with Judge Torres ordering plaintiff to file an amended complaint that "set forth the specific particulars as to the facts on which the claims are based." (Def.'s Mem., Ex. A.) If despite the opportunity to fine-tune a complaint, especially at the Court's direction, " 'a naked conclusion, unanchored in any meaningful set of factual averments' is the asserted basis for relief, dismissal may follow." *Id.*

(quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d at 515).

## II. Organizational Note

It is worth noting that the Amended Complaint, while being structurally organized into a General Allegations section and seven counts, is substantively disorganized. A great deal of the facts alleged to support the plaintiff's claims are no more than conclusory statements or bald assertions. Also, the plaintiff has overlapped and intertwined many of the claims he asserts within the seven counts, often confusing and intermingling one traditional claim with another. As a result, I will not address the seven counts in the order in which they appear in the Amended Complaint, but rather in an order I find to facilitate a more logically organized analysis of the Amended Complaint.

Also, it is initially worth noting that while Sombrotto is named as a defendant in his official capacity as President of the NALC and Sartini, Szeliga and Haupt are named as defendants in their capacities as officers of Branch 57 within the heading of the Amended Complaint, nowhere are they mentioned in the "General Allegations" portion of the Amended Complaint, and Counts One through Five contain no claim directed against any of them. Counts Six refers to "other members of the NALC" (Amended Complaint ¶ 63) and therefore can be read as making a claim against Sombrotto, Sartini, Szeliga and Haupt. Likewise, Count Seven sets forth a claim against "Defendants" generally, *id.* ¶ 74, which can be read to include these men. Thus, the only claims made against Sombrotto, Sartini, Szeliga and Haupt are those within Counts Six and Seven. Consequently, their motions to dismiss only relate to those claims.

## III. Counts Three and Five—Violations of the First Amendment

Counts Three and Five should be dismissed. Counts Three and Five, entitled Violation of Freedom of Speech and Freedom of Assembly, respectively, allege that the NALC, Branch 57 and Pimentel breached their duty under the NALC constitution, to protect plaintiff's rights to freedom of speech and freedom of assembly, both guaranteed by the First Amendment to the United States Constitution. *Id.* ¶¶ 49 and 58. Further, plaintiff alleges in Count Five that "[t]he actions of Branch No. 57, Pimentel and NALC constitute a violation of Title IV of the Labor–Management Reporting and Disclosure Act of 1959, ... 29 U.S.C. § 401 et seq. ...." *Id.* ¶ 60. By their own terms, the claims relating to the First Amendment do not appear to allege that the Union Defendants violated the plaintiff's First Amendment rights but rather violated some duty under the NALC Constitution to protect those rights. Nevertheless, the plaintiff asserted at oral argument on the present motion and in his memorandum in opposition thereto that the Union Defendants in fact did violate the plaintiff's First Amendment rights. Consequently, I will first address Counts Three and Five as having alleged that the Union Defendants violated plaintiff's rights guaranteed by the First Amendment.

Only government action and not that of a private entity can violate the First Amendment. *See Hovan v. United Brotherhood of Carpenters and Joiners*, 704 F.2d 641, 642 (1st Cir.1983). This is so "because the First Amendment to the federal Constitution forbids the federal *government* from taking certain actions ('Congress shall make no law ...')...." *Id.* (italics in original). Labor organizations however have traditionally been considered private, not governmental entities and thus their actions cannot be claimed to violate the First Amendment. *Id.* Nevertheless, the court in *Hovan* noted three situations where the action of a labor organization, as a private entity, can in fact be considered to be violative of the First Amendment. First, if labor and management enter an agreement pursuant to and authorized by federal law that violates an individual's rights, the agreement may be considered "government action" for the purposes of the First Amendment. *Id.* at 633–634 (citing *Railway Employees' Department v. Hanson*, 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956); *Linscott v. Millers Falls Co.*, 440 F.2d 14 (1st Cir.1971), *cert. denied*, 404 U.S. 872, 92 S.Ct. 77, 30 L.Ed.2d 116 (1971)). Second, if, under a "nexus" theory,

the plaintiff can establish that the action of a private party was in fact motivated by specific action by the government, then the action of the private party may be considered governmental for purposes of the First Amendment. *Id.* at 645. Lastly, if the government and a private entity are joint participants in the challenged activity, it may be considered governmental action subject to the strictures of the First Amendment. *Id.*

The plaintiff does not assert and the allegations of the Amended Complaint do not support either of the first two situations described above. Plaintiff's argument most closely fits the third situation. Plaintiff correctly points out that the United States Supreme Court held in *Adickes v. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1969), that the involvement of a government official in a conspiracy with a private actor provides the necessary governmental action to make out a claimed violation of the equal protection clause of the Fourteenth Amendment. *Id.* at 152. Plaintiff argues that this reasoning is equally applicable in the First Amendment context and that his "allegations in the amended complaint support the theory that Pimentel conspired with Lawson, a state actor, in depriving [plaintiff] of his rights of freedom of speech and freedom of assembly." (Pl.'s Mem. in Supp. of Obj. to Mot. to Dismiss ("Pl.'s Mem.") at 8.)

At oral argument on the present motion, plaintiff pointed to paragraphs 16, 28, 31, 32, 55 and 54 in the Amended Complaint as demonstrating the alleged conspiracy between Pimentel and Lawson to deprive plaintiff of his First Amendment rights. Without addressing each of these allegations, it is safe to say that only paragraph 32 sets forth any facts that on their face connect Pimentel and Lawson. It states in conclusory fashion that "[t]he incident of October 9, 1992 between Lawson and Socha was a result of Pimentel's attempt to have Socha fired." (Amended Complaint ¶ 32.)

 This statement is little more than a conclusion which the plaintiff fails to establish through any specific facts as Judge Torres ordered. As a result, it is a naked and unverifiable conclusion which cannot provide the necessary factual support for plaintiff's conspiracy argument. Moreover, the incident of October 9, 1992 that ¶ 32 refers to had no relation to or impact on plaintiff's First Amendment rights. The Amended Complaint states:

> On October 9, 1992 Socha received a seven (7) day suspension notice for failure to follow orders.... Socha had left work on sick leave and had presented Lawson with a request for sick leave authorization.... Lawson refused to authorize Socha's sick leave but ordered Socha to leave the building, thereafter charging Socha with being absent without leave (AWOL).

(Amended Complaint ¶¶ 29–30.) Nowhere does plaintiff establish that this incident had any relation whatsoever to his rights to freedom of speech and assembly. Consequently, plaintiff has failed to establish that the Union Defendants conspired with or jointly participated with a government actor in depriving plaintiff of his rights guaranteed by the First Amendment. Therefore, he cannot establish that the Union Defendants violated his rights to freedom of speech and assembly, and his First Amendment claims in Counts Three and Five should be dismissed.[1]

 Plaintiff's claim pursuant to Title IV of the LMRDA, 29 U.S.C. § 401 et seq., should also be dismissed. The defendants correctly point out that the LMRDA by its own definitions does not apply to labor organizations that only represent employees of the federal government, *see Martinez v. American Federation of Government Em-*

---

1. Plaintiff does not assert a claim pursuant to Title I of the LMRDA, 29 U.S.C. §§ 411–415, the so called Bill of Rights of Members of Labor Organizations. 29 U.S.C. § 411(a)(2) specifically protects a union member's rights to freedom of speech and assembly against infringement by the union. To succeed on a claim that the union violated this section, a plaintiff union member must prove by clear and convincing evidence that the union engaged in purposeful and deliberate attempts to suppress dissent within the union. *Rodonich v. House Wreckers Union Local 95*, 817 F.2d 967, 973 (2d Cir.1987). Nowhere in the Amended Complaint does plaintiff allege facts that would demonstrate that the Union Defendants' actions against the plaintiff resulted from their deliberate intent to suppress dissent. Thus, the Amended Complaint cannot be construed to set forth a viable claim pursuant to Title I of the LMRDA, 29 U.S.C. §§ 411–415.

ployees, 980 F.2d 1039, 1041–42 (5th Cir.), cert. denied, —— U.S. ——, 113 S.Ct. 2996, 125 L.Ed.2d 690 (1993), but incorrectly assert that this rule applies to the NALC. 29 C.F.R. § 451(a)(4) specifically states that while a labor organization composed entirely of employees of the government is not covered by the LMRDA, "a labor organization composed of employees of the United States Postal Service ... is subject to the [LMRDA] by virtue of the Postal Reorganization Act of 1970." Nevertheless, Title IV, found at 29 U.S.C. §§ 481–483, regulates elections within labor organizations subject to the LMRDA. Nowhere in the Amended Complaint does plaintiff allege an election violation under Title IV. While he does complain that he was libeled by a statement published in "The Defender," Branch 57's newsletter, that plaintiff, along with others, had been disqualified as a candidate for election, he does not assert that such disqualification is a basis for liability for the defendants under Title IV or any other law. Therefore, plaintiff's claim under Title IV of the LMRDA, 29 U.S.C. §§ 481–483 in Count Five should be dismissed.

## IV. Counts One and Two—Breach of NALC Constitution and Duty of Fair Representation, respectively

In Counts One and Two, plaintiff presents a morass of intertwined claims that require some segregation before being addressed. Initially, notice should be taken of the fact that claims for breach of a union's constitution and breach of a union's duty to represent its members fairly are separate and distinct causes of action. The former was recognized by the United States Supreme Court in Wooddell v. Electrical Workers, 502 U.S. 93, 112 S.Ct. 494, 116 L.Ed.2d 419 (1991). There the court noted that § 301(a) of the Labor–Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), provides a cause of action for violation of a contract between two labor organizations in an industry affecting commerce. Wooddell, 502 U.S. at 97, 112 S.Ct. at 498. The court held, therefore, that a union member may bring suit pursuant to § 301(a) for violation of his union's constitution if he contends that the constitution is a contract between two

labor organizations. Wooddell, 502 U.S. at 97–101, 112 S.Ct. at 498–499. A union's duty of fair representation, on the other hand, does not stem from any specific agreement but is inferred from the union's exclusive authority under the National Labor Relations Act ("NLRA"), 29 U.S.C. § 159(a), to represent all employees in a bargaining unit and may be brought pursuant to § 301(a) of the LMRA. Chauffeurs, Teamsters and Helpers Local No. 391 v. Terry, 494 U.S. 558, 563, 110 S.Ct. 1339, 1343, 108 L.Ed.2d 519 (1990); Vaca v. Sipes, 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842 (1967).

On their face, both Counts One and Two of the Amended Complaint make mention of the Union Defendants' obligations under the NALC constitution, but when plaintiff addresses Counts One and Two in his arguments, he treats them identically as claimed breaches of the union's duty to represent him fairly. By way of example, Count I in the Amended Complaint alleges that "Branch No. 57, Pimentel and NALC had a duty to uphold and perform the agreements set forth in the NALC constitution" and breached that duty. (Amended Complaint ¶¶ 41 and 42.) Count Two in the Amended Complaint alleges that Branch 57, Pimentel and the NALC breached their "duty to represent Socha fairly in all actions arising under the NALC constitution." Id. ¶¶ 45 and 46. Yet, in his Statement of Elements, plaintiff asserts identically for both Counts One and Two that

Defendants had a duty to fairly and adequately represent Plaintiff at and prior to administrative hearings.... Defendants failed to fairly and adequately represent Plaintiff.... Defendants, by their action, have breached the agreements set forth in the NALC Constitution.

(Pl.'s Statement of Elements, Count One ¶¶ 2–4 and Count Two ¶¶ 2–4.) Similarly, plaintiff argues in his memorandum that "[t]he allegations of the Amended Complaint clearly demonstrate a pattern of behavior by members of the NALC ... which constitutes a breach of the NALC constitution. Specifically, as stated in Count II of Plaintiff's Amended Complaint, the Defendant had a 'duty to represent Socha fairly in any and all actions arising under the NALC Constitu-

tion.'" (Pl.'s Mem. at 4–5.) Plaintiff appears to have confused and combined the distinct causes of action for breach of the union's constitution and breach of the union's duty to represent its members fairly. Therefore, I will treat the Amended Complaint as having made both claims, mindful of the Court's obligation to determine if the allegations of the complaint permit relief on any theory. *O'Neil v. O.L.C.R.I.*, 750 F.Supp. at 553. Thus, I will treat Count One as a breach of constitution claim pursuant to *Wooddell v. Electrical Workers*, 502 U.S. 93, 112 S.Ct. 494, and Count Two as a breach of the duty of fair representation pursuant to *Chauffeurs, Teamsters and Helpers Local No. 391 v. Terry*, 494 U.S. at 563, 110 S.Ct. at 1343; *Vaca v. Sipes*, 386 U.S. at 177, 87 S.Ct. at 909.

### A. Count Two—Breach of Duty of Fair Representation

■ Count Two of the Amended Complaint should be dismissed. Claims that a union breached its duty of fair representation are ordinarily brought pursuant to § 301(a) of the Labor Management Relations Act ("§ 301(a)"), 29 U.S.C. § 185(a), which states:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

*Id.*

■ This action is more properly brought pursuant to the Postal Service's analog to § 301(a), 39 U.S.C. § 1208(b), which states:

Suits for violation of contracts between the Postal Service and a labor organization representing Postal Service employees, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy.

Because the language of both these statutes is identical in all relevant aspects, cases interpreting § 301(a) are applicable to § 1208(b). *Miller v. U.S. Postal Service*, 985 F.2d 9, 10 n. 1 (1st Cir.1993) (citing *Bowen v. U.S. Postal Service*, 459 U.S. 212, 232 n. 2, 103 S.Ct. 588, 600 n. 2, 74 L.Ed.2d 402 (1983)).

In *DelCostello v. Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the United States Supreme Court held that the six month statute of limitations found in § 10(b) of the NLRA, 29 U.S.C. § 160(b), applied to "hybrid claims," combined claims against a plaintiff's employer for breach of a collective bargaining agreement pursuant to § 301 of the LMRA, 29 U.S.C. § 185, and against the plaintiff's union for breach of its duty of fair representation. *See also Abernathy v. United States Postal Service*, 740 F.2d 612, 617 (8th Cir.1984) (applying *DelCostello* to hybrid suit under 39 U.S.C. § 1208(b) and holding that § 10(b)'s six month limitation period applies thereto). The court noted that there was no federal statute of limitations expressly applicable to the hybrid suit and the general rule in such circumstances is to apply the most closely analogous state statute. *Id.*, 462 U.S. at 159, 103 S.Ct. at 2288. Nevertheless, the court recognized a narrow exception to that general rule and held that a federal statute of limitations could be utilized "when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking." *Id.* at 172, 103 S.Ct. at 2294. Section 10(b), the court concluded, fits within this exception for hybrid claims. *Id.*

■ Plaintiff argues that the holding in *DelCostello* is not applicable here, because this case, he contends, is not a hybrid suit. He provides no basis for this argument.

Such a suit, as a formal matter, comprises two causes of action. The suit against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's

duty of fair representation, which is implied under the scheme of the National Labor Relations Act.

*Id.* at 164, 103 S.Ct. at 2290. Presumably, the basis of plaintiff's argument is that he has not sued his employer, the Postal Service, for breach of the collective bargaining agreement and therefore has not asserted the type of dual claim common to hybrid suits. Nevertheless, the *DelCostello* court held that

> "the two claims are inextricably interdependent. 'To prevail against either the company or the Union, ... [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union.'" The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both.

*Id.* at 164–165, 103 S.Ct. at 2291 (citation omitted). *See also Linnane v. General Electric Co.,* 948 F.2d 69, 74 (1st Cir.1991) (prohibiting plaintiff from evading § 10(b)'s six month limitation period "by repackaging a hybrid § 301/fair representation suit as a subset of that action ...") Thus, plaintiff's claim that the Union Defendants violated their duty to represent him fairly is governed by the holding in *DelCostello,* and consequently is subject to the six month limitation period in § 10(b).

The initial complaint in this case was filed in state court on January 12, 1994. Accordingly, Count Two is time-barred to the extent the claims therein rest on events that took place prior to July 12, 1993. A review of the factual allegations in the Amended Complaint reveals that only the events described in ¶¶ 21 and 22 occurred after July 12, 1993. Those paragraphs allege that on July 21, 1993, a pre-arbitration agreement was entered into by plaintiff, the NALC and the Postal Service with respect to a September 9, 1992 suspension wherein the suspension was to be held in abeyance for six months and expunged from plaintiff's record and plaintiff was "to be reimbursed the time lost by a salary advance." (Amended Complaint ¶ 21.) The Postal Service allegedly "failed to fully

comply with the July 21, 1993 pre-arbitration agreement in that Socha has not been fully compensated for lost wages." *Id.* ¶ 22. Nowhere in these two paragraphs, or anywhere else in the Amended Complaint for that matter, does plaintiff allege any wrongdoing on the part of the Union Defendants in relation to this incident. Thus, it cannot provide the basis of a timely claim against those defendants, and since no other event alleged in the Amended Complaint occurred after July 12, 1993, the plaintiff's claims in Count Two are time-barred by § 10(b).

The plaintiff argues in hypothetical fashion that the six month statute of limitations should be equitably tolled. He states:

> [T]o allow the union to hide behind the six-month statute of limitations would effectively validate their past treatment of the Plaintiff. By delaying the grievance process the union would be able to use the six-month statute of limitations as a convenient defense. The union's own malfeasance in failing to give Socha proper representation caused delays which the union would then use to bar Socha from relief.

(Pl.'s Mem. at 6–7.)

A cause of action against a union for breach of its duty of fair representation "normally accrues when a plaintiff 'could first have successfully maintained a suit based on that cause of action,'" *Demars v. General Dynamics Corp.,* 779 F.2d 95, 97 (1st Cir. 1985) (quoting *Bell v. Aerodex, Inc.,* 473 F.2d 869, 873 (5th Cir.1973)), when he or she first knew or should have known of the acts constituting the union's wrongdoing. *Id.; Graham v. Bay State Gas Co.,* 779 F.2d 93, 94 (1st Cir.1985). "Under federal law, a defendant's 'fraudulent concealment' may toll the statute of limitations until plaintiff discovers the facts that form the basis of his cause of action, so long as two conditions are met: first, 'defendant raising the limitations defense must have engaged in fraud or deliberate concealment of material facts relating to his wrongdoing,' and second, 'plaintiff must have failed to discover these facts within the normal limitations period despite his exercise of due diligence.'" *Demars v. General Dynamics Corp.,* 779 F.2d at 97 (citations omitted). Nothing in the Amended Complaint

demonstrates that the Union Defendants fraudulently and deliberately concealed facts material to their alleged wrongdoing. The plaintiff's allegations in no way show that he was lulled by the words or deeds of the Union Defendants into inaction. On the contrary, plaintiff sets forth each of the alleged wrongdoings in list-like fashion, making it impossible to conclude that he did not know of the acts he claims to have violated the union's duty of fair representation. Therefore, § 10(b)'s six month statute of limitations should not be tolled and Count Two of the Amended Complaint should be dismissed as time-barred.

### B. Count One—Breach of the NALC Constitution

Count One of the Amended Complaint, which alleges that the Union Defendants breached the NALC Constitution, should be dismissed. The Union Defendants correctly argue that the six month statute of limitations found in § 10(b) of the NLRA, 29 U.S.C. § 160(b), also applies to and similarly bars Count One. The United States Supreme Court decision in *Reed v. United Transportation Union*, 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1988), is its most recent directive on the selection of an appropriate statute of limitations for actions against labor unions for wrongdoing and has been interpreted by lower courts as particularly instructive on the appropriate selection of a statute of limitations in suits alleging breach of union constitutions. *See Phelan v. Local 305*, 973 F.2d 1050 (2nd Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1415, 122 L.Ed.2d 785 (1993); *Brenner v. Local 514, United Brotherhood of Carpenter*, 927 F.2d 1283 (3rd Cir.1991).

In *Reed v. United Transportation Union*, 488 U.S. 319, 109 S.Ct. 621, the court held that a state statute of limitations for personal injury actions, rather than § 10(b), applied to the plaintiff's claim pursuant to § 101(a)(2) of Title I of the LMRDA, 29 U.S.C. § 411(a)(2), that his union had violated his right to free speech as to union matters. *Id.* at 334, 109 S.Ct. at 630. The Supreme Court in *Reed* applied the same test it had utilized in *DelCostello v. Teamsters*, 462 U.S. 151, 103 S.Ct.

2281, but in doing so, noted that the *DelCostello* court's decision to opt for a federal rather than state statute of limitations was a narrow exception to the general rule favoring the application of state law when the federal cause of action at issue has no expressly applicable federal statute of limitations. *Reed*, 488 U.S. at 324 and 326, 109 S.Ct. at 625 and 626. The court stated:

> We decline to borrow a state statute of limitations only "when a rule from elsewhere in the federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking."

*Id.* at 324, 109 S.Ct. at 625 (quoting *DelCostello*, 462 U.S. at 172, 103 S.Ct. at 2294).

First, the court found that claims pursuant to § 101(a)(2) of Title I of the LMRDA, which protects rights of free speech and assembly similar to the First Amendment, are similar to federal civil rights claims pursuant to 42 U.S.C. § 1983 which it has held are analogous to various state law claims and are therefore subject to state personal injury statutes of limitations. Consequently, it determined that § 101(a)(2) claims are readily analogized for the purpose of borrowing a statute of limitations to state personal injury actions. *Id.*, 488 U.S. at 326, 109 S.Ct. at 626.

The *Reed* court then turned to an analysis of the underlying federal policies involved. The court stated that in *DelCostello*

> The specific focus of our comparison between unfair labor practice charges governed by § 10(b) and hybrid § 301/fair representation claims was their effects upon the formation and operation of the collective-bargaining agreement between the employer and the bargaining representative, and upon the private settlement of disputes under that agreement through grievance-and-arbitration procedures.... Those same interests, we held, are implicated by hybrid § 301/fair representations claims against union and employer, because such claims constitute a direct challenge to private dispute settlement under the collective-bargaining agreement.

*Reed,* 488 U.S. at 330, 109 S.Ct. at 628. Because the NLRA and hybrid suits both implicate the same underlying policies, § 10(b)'s six month limitation period was a significantly more appropriate rule for hybrid suits than a state statute of limitation. *DelCostello,* 462 U.S. at 170–171, 103 S.Ct. at 2293–2294. In contrast, the *Reed* court found that the interests in stable bargaining relationships between unions and employers and in private dispute resolution under collective bargaining agreements, shared by the NLRA and hybrid suits, were only tangentially implicated by § 101(a)(2) claims which generally involve internal union disputes. *Reed,* 488 U.S. at 330, 109 S.Ct. at 628. The court concluded that § 101(a)(2) claims have "substantially less immediate and less significant an impact on bargaining and private dispute settlement than that which led us to apply the § 10(b) statute to hybrid § 301/fair representation claims, which directly challenge both the employer's adherence to the collective-bargaining agreement and the union's representation of the employee in grievance and arbitration procedures." *Id.* at 331, 109 S.Ct. at 629 (citing *Doty v. Sewall,* 784 F.2d 1, 7 (1st Cir.1986)).

Lower courts deciding the appropriate statute of limitations for claims alleging a union breached its constitution have emphasized the *Reed* court's distinction between actions which implicate the relationship between union and employer and those which relate wholly to internal union activities. *See Phelan v. Local 305,* 973 F.2d at 1061; *Brenner v. Local 514, United Brotherhood of Carpenter,* 927 F.2d at 1294. In *Brenner v. Local 514,* 927 F.2d 1283, the court drew a distinction for limitations purposes between those breach of union constitution claims that are "'normally intertwined with the day-to-day relationship between management and labor,' for which section the six-month 10(b) limitation period is appropriate, and those claims which have little similarity to an unfair labor claim and where '[t]he need for speedy resolution of the dispute is therefore not present.'" *Id.* at 1294 (quoting *Grasty v. Amalgamated Clothing & Textile Workers Union,* 828 F.2d 123, 132–33 (3rd Cir.1987), *cert. denied,* 484 U.S. 1042, 108 S.Ct. 773, 98 L.Ed.2d 860 (1988)). Based on this distinc-

tion and the reasoning in *Reed,* the *Brenner* court held that a state statute of limitations and not § 10(b) was applicable to a claim of breach of a union's constitution that had only indirectly implicated the union's ability to negotiate effectively with employers. *Id.* at 1295.

Thus, the central issue to determining the appropriate statute of limitations governing Count One is the extent to which the plaintiff's claims that the Union Defendants breached the NALC constitution impact on the relationship between the Union and the Postal Service under the collective bargaining agreement. This question is not so easily answered in this case, because Count One, on its face, does not indicate the basis for plaintiff's breach of constitution claim. Instead, it blanketly states that "Branch No. 57, Pimentel and NALC had a duty to uphold and perform the agreements set forth in the NALC constitution" and breached that duty. (Amended Complaint ¶ 41–42.) Count One does not specify what provisions or "agreements" of the NALC constitution were violated, and it is arguable whether it alleges all of the necessary elements for a breach of union constitution claim under *Wooddell v. Electrical Workers,* 502 U.S. at 97–101, 112 S.Ct. at 498–499 (holding plaintiff must charge that the alleged breach violates a contract between two labor organizations). Nevertheless, mindful of my obligation to determine if any of the allegations permit relief on any theory, *O'Neil v. O.L.C.R.I.,* 750 F.Supp. at 553, I look outside of Count One to determine the nature of the breach of constitution claim being made and the corresponding statute of limitations.

### 1. Duty of Fair Representation Imposed by NALC Constitution

As noted above, while both Counts One and Two of the Amended Complaint make mention of the Union Defendants' obligations under the NALC constitution, when plaintiff addresses Counts One and Two in his arguments, he treats them identically as a claimed breach of the union's duty to represent him fairly. Plaintiff does contend in his memorandum that the NALC constitution

imposed a duty of fair representation upon the Union Defendants (Pl.'s Mem. at 5), but this allegation is not found in the Amended Complaint and it is that pleading which is being judged in this motion. Moreover, as noted above, a claim for breach of the duty of fair representation is of a different jurisprudential ilk than one for breach of a union's constitution. *See Moore v. Local Union 569 of the IBEW*, 989 F.2d 1534, 1541 (9th Cir. 1993), *cert. denied*, — U.S. —, 114 S.Ct. 1066, 127 L.Ed.2d 385 (1994). Despite all of this, whether plaintiff can assert a breach of the duty of fair representation claim within a *Wooddell* breach of a union's constitution claim and if so, whether he has properly done so need not be determined here. Assuming *arguendo* that the answer to these two questions is affirmative, the analysis of *Reed v. United Transportation Union*, 488 U.S. 319, 109 S.Ct. 621, *Brenner v. Local 514*, 927 F.2d 1283, and *Phelan v. Local 305*, 973 F.2d 1050, outlined above, compels application of the six month statute of limitations in NLRA § 10(b) to such a claim. Those cases chose state statutes of limitations over § 10(b), because the claims in those cases differed from the hybrid/fair representation claims that *DelCostello*, 462 U.S. 151, 103 S.Ct. 2281, held § 10(b) applied to in that the claims in *Reed, Brenner* and *Phelan* did not impact the labor-management relationship in the same direct fashion that hybrid claims do. Consequently, because of the different policies underlying the different types of claims the reasoning of *DelCostello* did not compel application of § 10(b) to the non-hybrid claims in those cases.

■ It is no great leap of logic to find that to the extent plaintiff asserts the Union Defendants breached the NALC constitution by breaching their duty of fair representation, that claim is analogous to the hybrid/fair representation claim in *DelCostello* and impacts the labor management relationship in the same manner. In fact, in the same paragraph of plaintiff's memorandum that he asserts that the NALC constitution imposes a duty of fair representation, he acknowledges that "[t]he duty of fair representation is inferred from the unions' exclusive authority under the NLRA, 29 U.S.C. Section 159(a), to represent all employees in

a bargaining unit. *Chauffeurs, Teamster and Helpers Local 3 No. 391 v. Terry*, 494 U.S. 558, 564 [110 S.Ct. 1339, 1344, 108 L.Ed.2d 519] ... (1990)." (Pl.'s Mem. at 5.) The *DelCostello* court acknowledged this same reasoning as the basis for a hybrid claim against a union for breach of the duty of fair representation. *DelCostello*, 462 U.S. at 164, 103 S.Ct. at 2290. As a result then, because the claim here is nearly identical to the one in *DelCostello*, that decision compels the application of § 10(b)'s six month limitation period to plaintiff's claim in Count One that the Union Defendants breached the NALC constitution by failing to represent him fairly. That claim is therefore time-barred based on the reasoning in Part IV.A., *supra* at 799–802, holding that Count Two is time-barred under § 10(b).

### 2. Duty to Protect First Amendment Rights Imposed by the NALC Constitution

Counts Three and Five allege that the Union Defendants had a duty pursuant to the NALC constitution to protect the plaintiff's rights to freedom of speech and assembly guaranteed by the First Amendment and breached that duty. (Amended Complaint ¶¶ 49–50 and 58–59.) To the extent that these claims can be considered as alleging breaches of the NALC constitution under Count One, they should be dismissed.

Again, plaintiff does not point to a provision of the NALC constitution that was violated and these claims on their face are quite unorthodox. It seems odd that the NALC constitution would guarantee the Union Defendants would protect plaintiff's rights under the United States Constitution. Nevertheless, in the context of this motion to dismiss, I must accept these allegations as true, *Gooley v. Mobil Oil Corp.*, 851 F.2d at 514, noting that the NALC constitution has not been submitted to the Court in conjunction with this motion.

■ There are two possible interpretations of these claims. The first is that plaintiff is alleging that the NALC constitution prevents any of the Union Defendants from directly violating plaintiff's rights guaranteed

by the First Amendment. This interpretation does not provide plaintiff with a meritorious claim.. As found previously in Part III., *supra* at 797–799, the allegations in the Amended Complaint do not support a claim that the Union Defendants violated plaintiff's rights to freedom of speech and assembly guaranteed by the First Amendment. Thus, to the extent that the NALC constitution can be read to prohibit the Union Defendants from violating the plaintiff's First Amendment rights, no such violation occurred here and correspondingly no violation of the NALC constitution.

■ The second potential interpretation of these claims is that the NALC constitution imposed a duty upon the Union Defendants to protect plaintiff from violations of his First Amendment rights by his employer, the Postal Service. It is illogical to conclude that the NALC constitution requires the Union Defendants to act as the guardian of plaintiff's First Amendment rights in matters unrelated to the collective bargaining agreement, and I am unwilling to do so where plaintiff has pointed me to no provisions of the NALC constitution in support of his claims. Therefore, the only plausible manner in which this protection can be expected to be performed is through Branch 57's representation of plaintiff through grievance procedures in the event that the Postal Service violates the plaintiff's First Amendment rights in a manner that also constitutes a breach of the collective bargaining agreement. Such an occurrence would trigger the Union's duty to represent the plaintiff fairly. Interpreted as such, plaintiff's claim becomes another amorphous claim for breach of the duty of fair representation in the context of a claimed breach of the NALC constitution and suffers the fate described above in Part IV. B.1., *supra* at 803–804, for such claims. Specifically, the claim is time-barred by § 10(b).

## V. Count Four—Intentional Infliction of Emotional Distress

■ Count Four of the Amended Complaint should be dismissed. That count alleges that the NALC, Branch 57 and Pimentel intentionally inflicted emotional distress upon plaintiff. The Union Defendants correctly argue that under Rhode Island law, a claim for intentional infliction of emotional distress will only lie where the defendants conduct causes emotional harm to plaintiff which is accompanied by physical symptomatology. *Reilly v. U.S.*, 547 A.2d 894, 896–897 (R.I. 1988); *Curtis v. Rhode Island Department for Children and Their Families*, 522 A.2d 203, 208 (R.I.1987); *Champlin v. Washington Trust Co.*, 478 A.2d 985, 988 (R.I.1984). Count IV alleges that plaintiff suffered "severe emotional distress, severe mental anguish and pain and suffering." (Amended Complaint ¶ 56.) This is the only reference to the injuries plaintiff suffered as a result of the Union Defendants' alleged infliction of emotional distress and it is not enough to carry Count Four past the required manifestation of physical ills. An allegation of pain and suffering, without more, is just the kind of bald assertion that cannot pass muster on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), *see U.S. v. AVX Corp.*, 962 F.2d at 115, especially in the present case, where plaintiff was specifically ordered by Judge Torres to "set forth particulars as to the facts on which the claims are based." (Def.'s Mem., Ex. A.); *see Gooley v. Mobil Oil*, 851 F.2d at 315. Thus, Count Four should be dismissed as plaintiff has failed to properly allege that the emotional distress allegedly caused by the Union Defendants' conduct resulted in physical symptomatology.

## VI. Count Six—Libel and Slander

Count Six of the Amended Complaint should be dismissed. This count alleges two separate claims. First, it alleges that plaintiff was libelled when the October 14, 1993 edition of the Branch 57 newsletter, "The Defender," which was signed by Pimentel, "stated that Socha, among others, was 'disqualified by the Election Committee for refusing to comply with Branch election procedures and/or for failure to meet the requirements of Article 5, Section 2 of the National Constitution which deals with application for Management positions.'" (Amended Complaint ¶ 66 and 68.) Count Six also alleges that "Pimentel, Lawson and other member of NALC and employees of [the Postal Service]

have continually made disparaging, slanderous, libelous and unsubstantiated statement's about [plaintiff's] emotional condition, employment and personal life that have damaged Socha's reputation at work and in the community at large." *Id.* ¶ 63.

I address the statement in "The Defender" first. In *Letter Carriers v. Austin,* 418 U.S. 264, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1973), the United States Supreme Court reemphasized that within the NLRA there was "a congressional intent to encourage free debate on issues dividing labor and management." *Id.* at 272, 94 S.Ct. at 2775 (quoting *Lynn v. Plant Guard Workers,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966)). Accordingly, the court stated that the actual malice standard for libel actions adopted in *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), applied in the labor context "to any publication made during the course of union organizing efforts, which is arguably relevant to that organizational activity." *Letter Carriers v. Austin,* 418 U.S. at 272 and 279, 94 S.Ct. at 2775 and 2778. This standard requires more than proof of malice in the common law sense. *Id.* at 281, 94 S.Ct. at 2779. The plaintiff must prove that an allegedly defamatory statement in a labor dispute was published with knowledge of its falsity or with reckless disregard for its truth. *Id.* at 273 and 281, 94 S.Ct. at 2775 and 2779. Plaintiff asserts that he has complied with this standard because he alleged that the statements made by Pimentel and others were "willful and malicious." (Amended Complaint ¶ 71.) This is simply not what is required under the *New York Times* standard, and nowhere in the Amended Complaint does plaintiff allege that the statement published in "The Defender" was made with knowledge of its falsity or with reckless disregard for its truth. Therefore, because plaintiff did not allege that the statement was published with actual malice as enunciated in *Letter Carriers v. Austin,* 418 U.S. at 273 and 281, 94 S.Ct. at 2775 and 2779, and defined in *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, his claim regarding "The Defender" statement should be dismissed.

Plaintiff's claim that Pimentel and other members of the NALC slandered him should also be dismissed. The Amended Complaint only sets forth one statement allegedly made by Pimentel and none by any other member of NALC. Therefore, Count Six should be dismissed as to any other individual member of the NALC, as plaintiff has done no more than baldly assert that these unknown people have slandered him without stating who made such statements and what those statements were. As stated, such assertions fall in the face of a motion to dismiss. For this reason, Count Six should be dismissed as to Sombrotto, Sartini, Szeliga and Haupt.

Turning to the claim against Pimentel, plaintiff alleges that Pimentel said, "I can't wait until he (Socha) becomes steward. He will be fired in six (6) months." (Amended Complaint ¶ 16.) A plaintiff claiming defamation must prove that the statement in question was published and that it was defamatory in order to recover. *See Elias v. Youngken,* 493 A.2d 158, 161 (R.I.1985); *Gaudette v. Carter,* 100 R.I. 259, 214 A.2d 197, 199 (1965). Publication requires that the defamatory words be communicated to a third person and understood by him or her. *Gaudette v. Carter,* 214 A.2d at 199. Words are defamatory "if false and malicious, imputing conduct which injuriously affects a man's reputation, or which tends to degrade him in society or bring him into public hatred and contempt...." *Elias v. Youngken,* 493 A.2d at 161. "[A] statement in the form of an opinion may be defamatory and therefore actionable if and only if 'it implies the allegation of undisclosed defamatory facts as the basis for the opinion.'" *Healey v. New England Newspapers, Inc.,* 555 A.2d 321, 324 (R.I.) (quoting *Belliveau v. Rerick,* 504 A.2d 1360, 1362 (R.I.1986)), *cert. denied,* 493 U.S. 814, 110 S.Ct. 63, 107 L.Ed.2d 30 (1989). Whether a particular communication is defamatory is a question of law for the court, *Elias,* 493 A.2d at 161, and is therefore properly determined on a motion to dismiss. Nowhere in the Amended Complaint has plaintiff alleged that Pimentel's statement was communicated to a third person who understood its import. Therefore, plaintiff has failed to fulfill the publication requirement of a slander claim. Also, the statement, on its

face, is clearly an opinion of Pimentel, and plaintiff does not point to and I do not find any defamatory facts which can be implied from this opinion. Paragraph 17 of the Amended Complaint immediately follows the allegation that Pimentel made this statement and reads:

> Socha's election as shop steward coincided with the commencement of the harassment by Pimentel, NALC and Management [of the Postal Service].

(Amended Complaint ¶ 17). In this context, the only fact that can reasonably be implied from this alleged statement is that Pimentel did not want plaintiff as shop steward and somehow intended to cause his dismissal. This is a expression of Pimentel's intention and not a statement of fact injurious to the plaintiff's reputation. Thus, plaintiff has also failed to establish that Pimentel's alleged statement was defamatory. Consequently, his slander claim is not viable and Count Four of the Amended Complaint should be dismissed.

*VII. Count Seven—Civil Rights Violation*

██ Count Seven should be dismissed. That Count alleges that the defendants "knowingly and maliciously harassed Socha over [a] prolonged period of time, in violation of Rhode Island General Laws, Section 42–112–1, ... and Article I, Section 2 of the Constitution of the United States." (Amended Complaint ¶ 74.) First, Article I, Section 2 of the United States Constitution concerns the United States House of Representatives and addresses such matters as the election and qualification of its members. What relevance that provision has to this lawsuit is inconceivable. Thus, that claim is without merit.

R.I.Gen.Laws § 42–112–1 provides in pertinent part:

> (a) All persons within the state, regardless of race, color, religion, sex, handicap, age, or country of ancestral origin, shall have, except as is otherwise provided or permitted by law, the same rights to make and enforce contracts, to inherit, purchase, to

lease, sell, hold, and convey real and personal property, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

The Amended Complaint fails to allege an impairment of any of the rights listed in the statute. Plaintiff does allege he suffers from "major depression related to job stress" (Amended Complaint ¶ 11), but stated at oral argument that he was not claiming that he is handicapped and was discriminated against because of that handicap within the meaning of § 42–112–1. Therefore, the claim based thereon must fail, and Count Seven of the Amended Complaint should be dismissed.

*Conclusion*

Based on the foregoing analysis, I recommend that the Union Defendants' Motion to Dismiss the Amended Complaint be granted.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt.[2] Failure to file specific objections in a timely manner constitutes a waiver of the right to review by the district court.[3]

---

**2.** Rule 32, Local Rules of Court,; Fed.R.Civ.P. 72(b).

**3.** *United States v. Valencia–Copete,* 792 F.2d 4 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir.1980).