Kevin **HOBAN**, as Administrator of the Estate of Robert Hoban, Robert McHughs and Linda McHughs individually and on behalf of all others similarly situated, Plaintiffs,

v.

**USLIFE CREDIT LIFE INSURANCE COMPANY**, Security of America Life Insurance Company and All American Life Insurance Company, Defendants.

No. 93 C 3559.

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 29, 1995.

Cathleen C. Cohen, Daniel A. Edelman, Tara Leigh Goodwin, James Eric Vander Arend, Michelle Ann Weinberg, Edelman & Combs, Chicago, IL, Julie L. Murphy, Lawrence Walner & Associates, Ltd., Chicago, IL, Edward O'Brien, Boston, MA, for Robert Hoban, Kevin Hoban.

Cathleen C. Cohen, Daniel A. Edelman, Tara Leigh Goodwin, James Eric Vander Arend, Michelle Ann Weinberg, Edelman & Combs, Chicago, IL, Julie L. Murphy, Lawrence Walner & Associates, Ltd., Chicago, IL, Edward O'Brien, Boston, MA, for Robert McHughs, Linda McHughs.

H. Blair White, Constantine L. Trela, Brandon David Lawniczak, Sidley & Austin, Chicago, IL, for USLIFE Credit Life Insurance Company, Security of America Life Insurance Company, All American Life Insurance Company.

## MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge:

Plaintiffs Robert Hoban,[1] Robert McHughs and Linda McHughs bring this putative class action lawsuit against defendants USLIFE Credit Life Insurance Company ("USLIFE"), Security of America Life Insurance Company ("SALI"), and the All American Life Insurance Company ("All–American"). The plaintiffs' six-count second amended complaint asserts violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), as well as numerous other state laws. Presently before the court are plaintiffs' motion for class certification and defendants' motion to dismiss the complaint. For the reasons set forth below, plaintiffs' motion is granted in part and denied in part, and defendants' motion is granted.

### I. Background

Plaintiffs are all purchasers of single-premium credit life and disability insurance policies from at least one of the defendants. These insurance policies were procured in conjunction with second mortgage loans made to the plaintiffs by several finance companies which are not parties to this action. After procuring their loans, plaintiffs received an insurance certificate from the defendants which outlined the terms of their insurance coverage. Complaint ¶ 40(b), Exb. A.[2] These certificates stated that plaintiffs were required to pay the entire premium amount up-front at the time of receiving the loan proceeds, but also provided for a refund of the unearned portion of the insurance premium in the event that the loan was prepaid before maturity.[3]

As with many holders of second mortgages, plaintiffs paid the outstanding amount due on the loan before the end of the term. All three named plaintiffs allege that because of their prepayment they were entitled to receive a refund of the unearned portion of the insurance premium, but that this amount was not calculated into the final payoff figure or refunded to them.[4] Plaintiffs filed this class action in 1993, alleging that by failing to automatically return the unearned portion of the insurance premiums defendants engaged in a pattern of racketeering activity prohibited by RICO, 18 U.S.C. §§ 1961–68, as well as various other state laws. We previously dismissed this case without prejudice on October 25, 1994, pending review by the Seventh Circuit of a grant of summary judgment by Judge Kocoras in *Richards v. Combined Ins. Co. of America,* No. 93 C 3541, 1993 WL

---

1. Although Robert Hoban was originally the named plaintiff in this action, he has since passed away. His brother and next of kin Kevin Hoban has replaced him in the lawsuit, and is suing on Robert Hoban's behalf. However, for the sake of simplicity, we will still refer to Robert Hoban as a plaintiff in this action.

2. Citations to "Complaint ¶ ___" refer to plaintiffs' second amended complaint, filed April 14, 1994.

3. The relevant portion of the certificates reads:

    TERMINATION—REFUND OF UNEARNED PREMIUM: Your insurance shall automatically end on the earliest of the following dates: (a) the date the loan is discharged through repayment; (b) the date the loan is renewed or refinanced; (c) the date of the original scheduled maturity of the loan; (d) the date of repossession of any collateral given as security for the loan; (e) the date written request for cancellation is given by you except where the Creditor requires such credit insurance.

    If your loan covered by this Certificate is discharged due to renewal or refinancing prior to the scheduled maturity date: (1) the insurance

    in force shall be terminated before any new insurance may be issued in connection with the renewed or refinanced debt; and, (2) any refund due hereunder shall be paid or credited to you. . . .

    On voluntary prepayment of debt, if a credit A & H claim is in progress, the amount of refund may be determined as if prepayment did not occur until benefits cease. That date is selected for purposes of calculating any A & H refund due. The refund will be computed by the Rule of Anticipation formula. In no event will a refund be made if the amount is less than $3.00. No refund or credit shall be made if insurance premium is deemed earned at death.

    Complaint Exb. A.

4. Plaintiff Robert Hoban alleges that eventually he did receive a refund of the unearned insurance premium, but he claims that this only occurred after he demanded the funds some three years after paying off the loan. Complaint ¶ 60. Plaintiffs Robert McHughs and Linda McHughs have paid off their loan amount, but claim to have never received a refund of the unearned premium. Complaint ¶ 62.

528043 (N.D.Ill. December 17, 1993), *aff'd,* 55 F.3d 247 (7th Cir.1995). Having reinstated the case and the previously filed motions for class certification and to dismiss, we now address the issues raised in those motions.

## II. Class Certification [5]

Plaintiffs have moved for certification of a class of all persons who purchased single-premium credit life or disability insurance from the defendants in conjunction with a mortgage loan, and who have either not paid off their loan, or prepaid the balance of the loan before the end of the term of insurance, and did not receive credit for or a refund of the remainder of the unearned insurance premium held by defendants. Complaint ¶ 65. Rule 23 of the Federal Rules of Civil Procedure establish a two-step analysis to determine if a class action is proper. We first determine whether the proposed class meets the four preliminary requirements of Rule 23(a):

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). If we find these preliminary requirements to be satisfied, we then must decide if the putative class qualifies under one of the three subsections of Rule 23(b). In the instant case, plaintiffs argue that "questions of law or fact common to the members of the class predominate over any questions affecting individual members, and [ ] a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).[6]

In evaluating a motion for class certification, the allegations made in support of certification are taken as true, and we do not examine the merits of the case. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974). The burden of showing that the class certification requirements have been met rests with the party seeking certification, in this case the plaintiffs. *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982); *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7th Cir.1993).

Plaintiffs assert that based on industry research and statistics, the proposed class consists of more than 1,000 class members. Defendants do not challenge that this allegation satisfies the numerosity requirement, and we do not find it an unrealistic estimate. Although plaintiffs do not state exactly how many persons would fall into the proposed class, we are driven by common sense to conclude that the class "is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1).

Nor do we have any difficulty finding that plaintiffs have satisfied 23(a)(2)'s requirement of commonality. Plaintiffs allege that defendants have issued insurance certificates containing misleading statements about the procedure to be followed for obtaining a refund of unearned insurance premiums. Whether these certificates contain fraudulent statements cognizable under RICO or the other state laws cited by plaintiffs are questions common to all potential class members. Moreover, claims arising out of form contracts are particularly appropriate for class action treatment. *Haroco, Inc. v. American Nat'l Bank and Trust Co. of Chicago,* 121 F.R.D. 664, 669 (N.D.Ill.1988).

---

**5.** Consistent with the dictates of the Seventh Circuit, we shall consider the motion for class certification before ruling on the motion to dismiss. *Peritz v. Liberty Loan Corp.,* 523 F.2d 349, 352–53 (7th Cir.1975); *see also Hudson v. Chicago Teachers Union, Local No. 1,* 922 F.2d 1306, 1316–17 (7th Cir.) (reaffirming *Peritz* ), *cert. denied,* 501 U.S. 1230, 111 S.Ct. 2852, 115 L.Ed.2d 1020 (1991).

**6.** Plaintiffs also argue that certification is proper under 23(b)(2) because, they contend, the defendants have "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect the class as a whole." Fed.R.Civ.R. 23(b)(2). However, as discussed below, injunctive or declaratory relief would inappropriate in this case, and therefore we limit our discussion to the propriety of a (b)(3) class.

However, defendants do challenge plaintiff Robert Hoban's ability to satisfy 23(a)(3)'s requirement of typicality. Defendants argue that Hoban does not have standing to raise a claim on behalf of the class—and is therefore atypical—because he admits in his complaint that he received a refund of the unearned premium immediately after requesting it. Thus, defendants contend, he is not a member of the proposed class and cannot bring suit on behalf those who fall within the class definition. *See Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir.1993) ("To have standing to sue as a class representative, the plaintiff 'must be part of the class and "possess the same interest and suffer the same injury" as the class members.'") (quoting *East Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977)).

■ We disagree. In evaluating a named plaintiff's typicality, we are "to focus on whether the named representative['s] claims have the same essential characteristics as the claims of the class at large." *Retired Chicago Police Ass'n*, 7 F.3d at 597 (quoting *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983)). While it is true that Hoban did eventually receive a refund three years after he prepaid the loan balance, he claims that he was entitled to these funds immediately after prepaying the underlying loan. Because he was never paid for the time value of these funds for the three years that they were withheld, Hoban maintains that he was damaged by defendants' practices. Persons such as Hoban are included within the class definition, Complaint ¶ 65, and his claims appear typical of all those who received a refund but were deprived of the time value of their money. Accordingly, we find that Hoban has satisfied the typicality requirement and has standing be bring suit.[7]

■ However, all the class representatives' claims are atypical of one portion of the class. The proposed class includes all those who still have a single-premium credit insurance policy outstanding with at least one of the defendants. Complaint ¶ 65(d)(1). Because these persons have not paid off their loan balance, they are not entitled to a refund of the insurance premium. Presumably, the class representatives seek injunctive and declaratory relief for these members, but none of the class members have claims typical of this subset. Accordingly, as the named representatives are not typical of those still possessing the type of insurance policies at issue in this case, the class definition is modified to delete this group from the class. *See* Fed.R.Civ.P. 23(c)(1) (authorizing amendment of certification order).[8]

■ We next reach defendants' challenge to the adequacy of plaintiffs' counsel. In support of their argument, defendants introduce a transcript of proceedings before Judge Richard Curry of the Circuit Court of Cook County in *The Dartmouth Plan, Inc. v. Delgado*, 87 CH 6676, wherein he denied a motion for class certification in part because of his finding that Daniel Edelman and Lawrence Walner were inadequate as counsel for the class representatives. We recognize that Judge Curry was sorely disappointed with counsel's performance, and that we should be concerned with the professionalism and competency of plaintiffs' counsel when deciding whether to certify a class. *See Williams v. Balcor Pension Investors*, 150 F.R.D. 109, 118–20 (N.D.Ill.1993) (denying class certification in part because of inadequacy of counsel). However, Messrs. Edelman and Walner have been found adequate by other judges in state and federal court, and their resumes indicate that they have successfully prosecuted numerous class actions in the past. While we are concerned with the negative findings of so respected and experienced a jurist as Judge Curry, after considering all the relevant information presented to us, we cannot deny class certification in this instance because of a single allegation of misconduct in another case.

---

7. Defendants do not challenge the typicality of the McHughs plaintiffs.

8. Because none of the named plaintiffs still maintain policies with the defendants, injunctive and declaratory relief would not be appropriate. Accordingly, we decline to certify the approved class under 23(b)(2).

■ Finally, having found the proposed class acceptable under Rule 23(a), we examine whether it falls within the definition of Rule 23(b)(3). As discussed above, the question of whether the certificates at issue are actionable under RICO is an issue common to all members of the class, and we find that this question predominates over all other individual issues. Moreover, resolution of this issue through the class action device would be more efficient than to allow a multitude of individual adjudications over a form insurance certificate. Therefore, we find that the proposed class, as amended, satisfies the requirements of Rule 23(b)(3).

Accordingly, we grant plaintiffs' motion in part and certify the following class:

> All persons who entered into one or more loan transactions (secured by their residences) with finance companies, in which they were required to purchase with the loan proceeds single-premium credit life or disability insurance from one of the defendants, and who within three years prior to the filing of the complaint paid off their loans in full (or otherwise terminated their loans without deficiency) before the expiration date indicated on the credit insurance and before the maturity date of the loan, and who did not receive a refund of the unearned insurance premium or a credit in the payoff calculation.

### III. Motion to Dismiss

■ A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Chaney v. Suburban Bus Div. of the Regional Transp. Auth.,* 52 F.3d 623, 627 (7th Cir.1995). At this stage in the litigation we take as true all factual allegations made in the complaint, and construe all reasonable inferences therefrom in plaintiffs'

favor. *Murphy v. Walker,* 51 F.3d 714, 717 (7th Cir.1995).

Defendants raise several challenges to the legal sufficiency of Counts I, II and VI, and, in the event that Count I is dismissed, move for dismissal of the remaining state claims for lack of subject matter jurisdiction. We need only address the challenges to Count I (RICO) because, as we shall see later, resolution of this issue disposes of the remainder of the case.

■ Count I alleges that defendants, by providing single-premium credit life and disability insurance pursuant to the form certificates attached to the complaint, engaged in a scheme to defraud the class members out of the unearned premiums they were entitled to receive upon prepayment. Plaintiffs claim that in the course of effectuating this scheme defendants violated the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343, thereby subjecting themselves to civil liability under RICO, 18 U.S.C. § 1962(c).[9] To state a cause of action under RICO, plaintiffs must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985); *Richards v. Combined Ins. Co. of America,* 55 F.3d 247, 249 (7th Cir.1995). "[T]o prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *Richards,* 55 F.3d at 249 (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989)). In order to base a RICO claim on mail or wire fraud, plaintiffs must properly allege that defendants knowingly participated in a scheme to defraud their insureds out of unearned premiums and used mail and wire services to effectuate their plan. *Richards,* 55 F.3d at 250.

■ We begin (and end) our discussion with the recent decision in *Richards.* Plain-

---

9. In pertinent part, § 1962(c) reads:
   It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or partici-

pate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

tiffs contend that because *Richards* was decided on a motion for summary judgment, and the court expressly declined to rule on the adequacy of the complaint, that decision has no bearing on the motion before us. At the outset, we observe that the Seventh Circuit had grave doubts about the ability of the *Richards* complaint to satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b). *Id.* at 250–51. The court nonetheless declined to rule on those grounds, and instead considered the grant of summary judgment. In ruling for the defendants, the court held that the insurance certificates at issue were insufficient as a matter of law to support an inference of fraud, and found that plaintiffs had failed to present any additional evidence of fraud. *Id.* at 252–53. In the instant case, plaintiffs have failed to allege any additional acts of fraud apart from the statements made in the insurance certificates.[10] Although not required to prove their case at this stage, plaintiffs must nonetheless allege enough facts to support a RICO claim; in *Richards,* however, the Seventh Circuit expressly held that a RICO claim could not be predicated solely on the insurance certificates before it. *Id.* at 252 ("[A]n implication of fraud on the basis of the documents themselves is a stretch that no reasonable jury could make, or ought to be allowed to make."). Therefore, if we find that the certificates in this case are essentially the same as those in *Richards,* we would necessarily have to dismiss the complaint.

Plaintiffs first assert that, as distinct from *Richards,* the certificates in this case contain misstatements of fact. Plaintiffs contend that because the certificates state that the insurance "automatically end[s]" upon prepayment, and that refunds will be "determined" and "computed," this implies that refunds will be made automatically upon prepayment. However, this language is not appreciably different from that presented in *Richards,* where the certificates stated that "insurance under th[e] certificate stops" if the loan is prepaid and any unearned premium "will be computed ... and will be

promptly paid or credited to the insured." 55 F.3d at 248 n. 3. If anything, the certificates in *Richards* were more problematic than the ones in this case, since the insurer stated that refunds would be made "promptly." In short, we disagree with plaintiffs that the text of the certificates contained misstatements of fact; rather, for purposes of RICO, we find these passages materially indistinguishable from those at issue in *Richards.*

Plaintiffs next contend that because the certificates do not contain the complete street address of the insurer, they impose an unreasonable obstacle to an insured's attempt to request a refund, and therefore evidence a fraudulent scheme. To be sure, the Seventh Circuit in *Richards* found the existence of the address of the company on the certificates to be "[a]nother factor" favoring the grant of summary judgment. *Id.* at 252. However, the court did not make the existence of the full street address a prerequisite to avoiding RICO liability. In this case, the certificates contained the name of the insurer, as well as the city and state in which it was located. Although notifying the insurer of prepayment would not be as easy as it was in *Richards,* nonetheless, the burden upon an insured is not so great as to permit the inference that defendants engaged in a scheme to defraud. For example, the insured could inquire from directory assistance as to the exact street address of the insurer, or simply send notification to the insurer without the full street address. In sum, we fail to see how the absence of a complete street address on the certificates somehow renders permissible the inference that defendants engaged in fraudulent scheme to keep the unearned portion of plaintiffs' insurance premiums.

▪ Accordingly, as the certificates attached to plaintiffs' complaint do not materially differ from those presented in *Richards,* we hold that plaintiffs have failed to state a claim under 18 U.S.C. § 1962(c) and dismiss Count I of the complaint. As we have dis-

---

**10.** Indeed, in the supplemental briefing ordered by this court in light of *Richards,* plaintiffs declined to point out any additional allegations of fraudulent conduct by defendants. Rather, they relied solely on an ill-fated attempt to distinguish the certificates in this case from those presented to the Court of Appeals in *Richards.*

missed the sole federal claim, and diversity jurisdiction does not exist, we decline to exercise our supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3).

### IV. Conclusion

For the reasons set forth above, plaintiffs' motion for class certification is granted in part and denied in part, and defendants' motion to dismiss the complaint is granted. It is so ordered.