**John SOUSA and Barbara Sousa individually and on behalf of all others similarly situated, Plaintiffs,**

**v.**

**NORTH CENTRAL LIFE INSURANCE CO., Defendant.**

C.A. No. 95–352–B.

United States District Court,
D. Rhode Island.

Dec. 13, 1995.

Boyajian, Harrington & Richardson, Alden C. Harrington, Providence, R.I., for Plaintiffs.

Edwards & Angell, Patricia A. Sullivan, Providence, R.I., for Defendant.

## FINAL JUDGMENT

FRANCIS J. BOYLE, District Judge.

This matter came on for hearing before this Court, Magistrate Judge Robert W. Lovegreen presiding, on October 25, 1995 on Defendant's Motion To Dismiss and Strike, and after oral argument presented by the parties and due consideration thereof, Magistrate Judge Lovegreen issued a Report and Recommendation. The Report and Recommendation of Magistrate Judge Lovegreen dated November 17, 1995 is hereby accepted and in accordance therewith, it is hereby:

## ORDERED

1. That Defendant's motion to dismiss Plaintiffs' RICO claim for failing to state a claim is granted.

2. That jurisdiction over Plaintiffs' remaining state law claims is denied.

3. That final judgment is hereby ordered in favor of the Defendant.

### REPORT AND RECOMMENDATION

LOVEGREEN, United States Magistrate Judge.

The plaintiffs, John and Barbara Sousa ("the Sousas"), have instituted this action pursuant to 18 U.S.C. § 1962(c) of the Racketeer Influenced and Corrupt Organization Act ("RICO") claiming that the defendant, North Central Life Insurance Company ("North Central"), engaged in a scheme to defraud plaintiffs by withholding unearned premiums paid by the Sousas in connection with their purchase of credit life and disability insurance. The Sousas' have also included a number of pendent state law claims. Presently before me are defendant's motions to strike, Fed.R.Civ.P. 12(f), and to dismiss pursuant to Federal Rules of Civil Procedure 8(a), 8(e), 9(b), 12(b)(2), 12(b)(3) and 12(b)(6). This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B) and Local Rule of Court 32(c). A hearing was held on October 25, 1995. After listening to the arguments of counsel and examining the memoranda submitted, I recommend that North Central's motion to dismiss be granted as to the plaintiffs' RICO claim and that the Court decline to exercise jurisdiction over plaintiffs' remaining state law claims.

### Facts and Travel of the Case

The facts portrayed in the light most favorable to the Sousas are as follows. North Central is an insurance company engaged in the business of selling credit life and disability insurance to debtors so that loans can be extinguished in the event of the death or disability of the debtor. North Central contracts with various mortgagors, who in turn offer these insurance benefits to their mortgagees. One of the companies that North Central offers such insurance through is Advanced Financial Services, Inc. (Advanced).

In July, 1989, the Sousas obtained a loan from Advanced, which was secured by a second mortgage on their residence. The Sousas contend that in connection with the loan, they were charged a single premium for credit life and disability insurance. Although the purchase of such insurance was termed "optional," plaintiffs aver that the premium was already included in documents that they were told to sign in connection with obtaining their loan.

The insurance certificate subsequently issued to the Sousas by North Central, in pertinent part, reads as follows:

This insurance stops on the Termination Date, shown in the benefit schedule or when your loan is paid off, renewed, refinanced or otherwise stops, whichever happens first. *If your insurance stops before*

*the Termination Date, you will be given a refund or a credit on your account of unearned premium.* This refund or credit will be calculated using a formula approved by the Insurance Commissioner. Refunds or credits of less than a [sic] $3.00 won't be made. This refund or credit will be calculated using a formula approved by the Insurance Commissioner. The refund for total disability insurance will be calculated on a "pro rata" basis. (Emphasis added.)

The Sousas' loan was subsequently sold in turn to two Virginia banks. Shortly thereafter, the Sousas discharged their loan prior to its natural termination date and thus, under the language of the certificate and state law, were entitled to a refund or credit of the unearned portion of the prepaid premium. However, they never received a refund, which they assert amounts to approximately $600.

As a result, the Sousas commenced this action contending that North Central "had a practice of keeping the unearned premiums unless and until the particular insured demanded a refund." Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss and Strike at 2. The plaintiffs additionally assert that North Central intentionally failed to institute adequate procedures to ensure that debtors receive an automatic refund or credit of any unearned premiums. Consequently, the Sousas aver that North Central violated § 1962(c) of RICO by engaging in a scheme to defraud purchasers of credit insurance who paid their loans off early and were thus entitled to a refund or credit of the unearned portion of the prepaid premium. The plaintiffs' complaint also includes the following pendent state law claims: common law fraud, breach of contract, negligent misrepresentation, conversion and unjust enrichment.

North Central now seeks to dismiss the plaintiffs' complaint on numerous grounds or, in the alternative, to strike certain alleged irrelevant, inflammatory and prejudicial allegations. Fed.R.Civ.P. 12(f). Because I recommend that the Sousas' complaint be dismissed under Fed.R.Civ.P. 12(b)(6) for failing to allege a "scheme to defraud" sufficient to implicate RICO, the remaining issues raised by North Central in its motions to dismiss and strike will not be addressed on the merits.

*Discussion.*

### I. Fed.R.Civ.P. 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of an action if that action fails to state a claim upon which relief can be granted. The First Circuit Court of Appeals has recognized a tension among precedents regarding the particularity of pleading required to overcome a Rule 12(b)(6) motion and has noted that "the degree of specificity with which the operative facts must be stated in the pleadings varies depending on the case's context." *Boston & Maine Corp. v. Town of Hampton,* 987 F.2d 855, 863 (1st Cir.1993) (quoting *U.S. v. AVX Corp.,* 962 F.2d 108, 115 (1st Cir.1992)).

In deciding a Rule 12(b)(6) motion, "the court must accept the well-pleaded factual averments of the ... complaint as true, and construe these facts in the light most flattering to the [plaintiff's] cause ..." *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir. 1988) (quoting *Chongris v. Board of Appeals,* 811 F.2d 36, 37 (1st Cir.), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 765 (1987)). Further, "the Court must deny a motion to dismiss if the allegations of the complaint permit relief to be granted on any theory, even one not expressly stated therein." *O'Neil v. Q.L.C.R.I.,* 750 F.Supp. 551, 553 (D.R.I.1990). "Nevertheless, minimal requirements are not tantamount to nonexistent requirements." *Gooley v. Mobil Oil Corp.,* 851 F.2d at 514. "[A] plaintiff ... is ... required to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Id.* at 515.

In connection with run-of-the-mine motions brought under Rule 12(b)(6), a reviewing court is obliged neither to "credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions or outright vituperation," nor to honor subjective characterizations, optimistic predictions or problematic suppositions. "[E]mpirically unverifiable" conclusions, not "logically com-

pelled, or at least supported by the stated facts," deserve no deference. *AVX Corp.*, 962 F.2d at 115 (citations omitted). "It is only when such conclusions are logically compelled, or at least supported, by the stated facts, that is, when the suggested inference rises to what experience indicates is an acceptable level of probability, that 'conclusions' become 'facts' for pleading purposes." *The Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989).

## II. *RICO § 1962(c) Standards.*

To establish a violation of § 1962(c) of RICO, a plaintiff must demonstrate "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). In order to establish "a pattern of racketeering activity," a plaintiff must show that the defendant committed two acts of racketeering within the span of ten years. *Aetna Casualty Surety Co. v. P & B Autobody*, 43 F.3d 1546, 1560 (1st Cir.1994). Additionally, it must be demonstrated that "the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989). In a civil action, all elements under § 1962(c) must be satisfied by only a preponderance of the evidence. *P & B Autobody*, 43 F.3d at 1560. If successful, a plaintiff is entitled to treble damages, costs and reasonable attorney's fees. 18 U.S.C. § 1964(c).

In commencing suit under § 1962(c), the plaintiffs have relied upon the enumerated racketeering activities of mail and wire fraud. 18 U.S.C. §§ 1341 and 1343. In order to establish violations of mail and wire fraud, plaintiffs must demonstrate that defendant engaged in "a scheme to defraud" and used the United States mails or interstate wire communications in furtherance of that scheme. *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 790 (1st cir. 1990), *cert. denied*, 498 U.S. 992, 111 S.Ct. 536, 112 L.Ed.2d 546; *see United States v. Castillo*, 829 F.2d 1194, 1198 (1st Cir.1987). It is imperative that such a scheme have been undertaken "with the *specific intent* to defraud." *McEvoy Travel, Inc.*, 904 F.2d at 790. (Emphasis added.) Where no such demonstration has been made, the claim must be dismissed. *See Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir.1990).

## III. *No Scheme to Defraud Has Been Alleged.*

Stripped of its rhetoric, the Sousas' complaint rests largely on: (1) the language in North Central's insurance certificate stating that paying off the loan prior to its natural termination date would result in a refund or account credit; and (2) North Central's alleged intentional failure to provide mechanisms to provide automatically for such refunds or credits. Thus, plaintiffs contend that through these actions North Central engaged in a "scheme to defraud" sufficient to implicate the powerful tentacles of RICO. However, I believe plaintiffs have failed to allege sufficient facts to constitute such a scheme.

A review of plaintiffs' complaint reveals no allegation that North Central was informed by either Advanced or the subsequent assignees of the Sousas' loan that the loan had been paid off prior to its natural termination date. In fact, the complaint contains no allegation that North Central even knew the identity of the final assignee of the Sousas' loan. Likewise there is no indication that the Sousas themselves ever notified North Central, except through commencement of the instant law suit.

Additionally, an examination of the insurance certificate issued by North Central reveals no misstatements or misrepresentations of fact. The document includes typical terms and conditions found in insurance policies and provides that any unearned portion of the premium will be refunded to the insured. Although notification of the defendant is not specifically addressed in the certificate, the top of the certificate clearly lists North Central's name and address.

Two recent federal decisions have held that insurance certificates containing similar language to the one at issue did not rise to

the level of a scheme to defraud sufficient to implicate § 1962(c). *Richards v. Combined Ins. Co. of Am.,* 55 F.3d 247 (7th Cir.1995); *Hoban v. USLIFE Credit Ins. Co.,* 163 F.R.D. 509 (N.D.Ill.1995). In *Richards,* plaintiffs were required to purchase credit life and disability insurance in order to procure a loan. After plaintiffs paid a single premium, defendant insurance company issued certificates that stated, "If your insurance stops before the Term of Insurance in the Schedule expires, you will promptly be given a refund or credit on your account of unearned premium." *Richards,* 55 F.3d at 248 n. 3. In granting defendants' motion for summary judgment, the court stated that

the certificates do not provide evidence that they are instruments in a scheme to defraud. Like most instruments of the insurance industry, they could be better written. However, an implication of fraud on the basis of the documents themselves is a stretch that no reasonable jury could make, or ought to be allowed to make.

*Id.* at 252. After finding the transaction between plaintiff and defendants of no help to the plaintiff, the court stated that "there really is no evidence that would substantiate a finding on the part of a jury that the defendants had engaged in a scheme to defraud." *Id.*

In *Hoban,* the credit life and disability insurance certificate issued by defendant insurance company stated that, upon early loan termination the insured would receive a refund which "shall be paid or credited to you ..." 163 F.R.D. at 512 n. 3. In granting defendants' motion to dismiss, the court found that the language in the certificates at issue was "not appreciably different from that presented in *Richards.*" *Id.* at 516. Although *Richards* had been decided in the context of a motion for summary judgment, the *Hoban* court noted that *Richards* "expressly held that a RICO claim could not be predicated solely on the insurance certificates before it." *Id.* Therefore, because no other allegation of fraud existed, beside the certificates, defendants' motion to dismiss was granted.

■ In the instant case, the relevant language in North Central's certificate does not materially differ from that contained in the certificates at issue in *Hoban* and *Richards.* I find the reasoning of these two cases persuasive in holding that North Central's certificate does not rise to the level of a "scheme to defraud" sufficient to implicate § 1962(c). Although the language in the certificate remains far from a model of clarity, it falls far short of constituting a wilful, deceitful or fraudulent design. *See McEvoy Travel Bureau, Inc.,* 904 F.2d at 790 (in order to establish a RICO violation predicated on mail or wire fraud, it is imperative to show that the defendant "engaged in a scheme to defraud with the specific intent to defraud ...").

■ Thus, plaintiffs' RICO claim remains founded on the slender allegation that North Central intentionally failed to institute mechanisms to provide automatic refunds or credits. However, based on the benign language in the certificates, the lack of any notice that the Sousas' had paid off their loan, and no allegation that North Central even had knowledge of the identity of the final assignee of the loan, such a conclusory allegation, without more, fails to rise to the level of a scheme to defraud sufficient to implicate § 1962(c). Accordingly, because neither the certificate itself nor the alleged actions of defendant fail to rise to the level of a "scheme to defraud," I recommend dismissal of plaintiffs' RICO claim.

## IV. *Remaining Claims.*

■ The plaintiffs remaining claims are grounded solely in state law. However, there is no independent federal jurisdictional basis to support such claims, as the amount in controversy for each plaintiff remains under $1000. *See Ferris v. General Dynamics Corp.,* 645 F.Supp. 1354 (D.R.I.1986) ("in a class action, diversity jurisdiction is defeated so long as there is any member of the class whose separate and distinct claim does not satisfy the jurisdictional requisite"). Thus, plaintiffs must attempt to invoke the "supplemental jurisdiction" of this court, 28 U.S.C. § 1367, which allows a federal court to retain jurisdiction over state claims that are closely related to the claim giving rise to the court's original jurisdiction.

However, as North Central notes, this Court has held that " 'in the usual case in which all federal-law claims are eliminated before trial, the balance factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point towards declining to exercise jurisdiction over the remaining state-law claims'." *Corrigan v. R.I. Dept. of Business Regulation,* 820 F.Supp. 647, 664–5 (D.R.I.1993) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966)). Therefore, I recommend that the Court decline to exercise jurisdiction over plaintiffs remaining state law claims.

### Conclusion

For the reasons stated, I recommend defendant's motion to dismiss plaintiffs' RICO claim for failing to state a claim be granted. Additionally, I recommend that the Court decline to exercise jurisdiction over plaintiffs remaining state law claims.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. Local Rule of Court 32; Fed. R.Civ.P. 72(b). Failure to file specific objections in a timely manner constitutes a waiver of the right to review by the district court. *United States v. Valencia–Copete,* 792 F.2d 4 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir.1980).

Nov. 17, 1995.